**STATE of Iowa, Appellee,**

v.

**Benjamin Perry CALDWELL, Appellant.**

No. 84–1119.

Supreme Court of Iowa.

April 16, 1986.

Rehearing Denied May 21, 1986.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., J. Patrick White, Co. Atty., and Linda McGuire, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, WOLLE, and LAVORATO, JJ.

HARRIS, Justice.

Defendant Caldwell was tried and convicted of second-degree murder for the death of Ellen Egan, his live-in girlfriend. Defendant's three assignments of error separately challenging jury instructions were rejected by the court of appeals. On

further review we agree and affirm the trial court.

Defendant and Ellen were out with friends at several Halloween parties in Iowa City. Throughout the evening they became more and more intoxicated. After a quarrel they separated. Defendant went home while Ellen went to another party where she reportedly became even more intoxicated. Ellen eventually decided to leave that party which was on the second floor of an apartment building. As she left she tripped and tumbled down the stairway but did not seem hurt in the fall. She then took a cab home.

When she arrived Ellen was confronted by defendant who wanted to know where she had been. Defendant testified he was also very intoxicated and that he became extremely jealous when he was drunk. He was angry because she had left him at the party and accused her of being with another man. Defendant then began shoving and slapping Ellen. When she attempted to get away from him, defendant hit her head against the bathroom door four or five times.

Defendant testified he stopped striking Ellen when he noticed a drop of blood coming from her nose. Ellen then came up to defendant in their bedroom but he pushed her away. Ellen hit the wall and slid to the floor. Defendant then picked her up, laid her on the bed, and went to bed himself. When defendant awoke at 5 a.m. he found he could not awaken Ellen and noticed fluid coming from her mouth. He called an ambulance but paramedics were unable to revive her. She was pronounced dead at 6:37 a.m.

Expert testimony indicated Ellen's skull was not fractured, nor did she suffer any massive blows which alone would have been responsible for her death. Instead, according to medical experts, she died from a subdural hematoma and cerebral edema. The experts could not say for certain whether the trauma causing her injuries was the result of defendant's actions or were instead the result of her fall down the stairs earlier in the evening. Testimony did reveal, however, that repeated blows, even minor ones, could have caused her death.

Defendant denied any intent to kill or harm her. A psychologist testified for defendant that, because he was intoxicated, he did not intend to kill or harm Ellen.

I. Defendant's first assignment challenges the trial court's jury instruction which explained the proximate cause element of the offense.[1] Defendant requested that foreseeability be included in the definition of proximate cause. The trial court refused the request and instead adopted the substance of I Iowa Uniform Jury Instructions (Civil) No. 2.6. The trial court's instruction was as follows:

> With regard to element no. 2 of instruction no. 10, the state is required to prove by evidence beyond a reasonable doubt that the defendant's conduct was a proximate cause of the death of Ellen Anne Egan.
>
> "Proximate cause" means that the defendant's conduct was a substantial factor in bringing about the death of Ellen Anne Egan, and that if it had not been for such conduct, Ellen Anne Egan would not have died.
>
> "Substantial" as used in this instruction means that defendant's conduct had such an effect in bringing about the death of Ellen Anne Egan as to lead a reasonable person to regard it as a cause of her death.
>
> If you find that the defendant inflicted the injuries which proximately caused the death of Ellen Anne Egan, then his conduct resulted in the death of Ellen Anne Egan within the meaning of these instructions. This is true even if the conduct of the defendant was not the sole proximate cause of her death.

In *State v. Marti* we said:

1. Defendant was charged with murder in the second degree in violation of Iowa Code sections 707.1 and 707.3 (1983). One of the ele-

ments which the State must prove is that the defendant's act was the proximate cause of the death.

The element of proximate cause in criminal prosecutions serves as a requirement that there be a sufficient causal relationship between the defendant's conduct and a proscribed harm to hold him criminally responsible.

290 N.W.2d 570, 584 (Iowa 1980). We said the proximate cause instructions used in civil trials are appropriate for use in criminal trials. *Id.* at 584–85. The prosecution must show both cause in fact and legal or proximate cause. *Id.* Cause in fact and legal or proximate cause have well-settled definitions. *See* W. Prosser & W. Keeton, *Prosser and Keeton on Torts* § 41, at 266 (5th ed. 1984) (explaining cause in fact as *sine qua non* test:. but for the defendant's conduct the harm would not have occurred); *Restatement (Second) of Torts* § 431 comment (a) (1965) (to constitute legal cause of harm, the defendant's conduct must be a substantial factor in bringing about the harm).[2]

Notwithstanding our approval of the civil proximate cause instruction in *Marti* Caldwell insists the challenged instruction was incomplete because it lacked the requirement of foreseeability. To support this contention he seizes on language in *State v. McFadden*, 320 N.W.2d 608 (Iowa 1982). In *McFadden* we again rejected a contention that proximate cause means something different in criminal cases than it does in civil cases. Answering a charge that the civil definition would be "too harsh to be just" to criminal defendants we observed: "[p]roximate cause is based on the concept of foreseeability." *Id.* at 613.

The defendant's reliance on the language just quoted is misplaced. Our holding in *McFadden* did not change the definition of proximate cause for criminal cases; it did precisely the opposite. The civil definition we previously approved in *Marti* was once more upheld. A relationship between proximate cause and foreseeability was mentioned, not to change or expand our definition, but merely to justify it.

We still adhere to our definition of proximate cause as explained in *Marti.* The trial court was correct in rejecting defendant's challenge to it.

■ II. The trial court submitted the lesser included offense of manslaughter for the jury's consideration. An essential element of manslaughter is recklessness. *State v. Conner*, 292 N.W.2d 682, 684–86 (Iowa 1980). In defining recklessness the trial court gave the substance of I Iowa Uniform Jury Instructions (Civil) No. 5.10. Defendant complains because the instruction failed to (1) expressly require conduct creating a high and unreasonable risk of death and (2) state that defendant must have been aware of that risk.

In *Conner* we said the legislature intended to preserve the common law requirements of recklessness for involuntary manslaughter. 292 N.W.2d at 686. *See also State v. Inger*, 292 N.W.2d 119, 123 (Iowa 1980). In *State v. Kernes*, 262 N.W.2d 602 (Iowa 1978) we considered the meaning of recklessness in an involuntary manslaughter case. We defined recklessness as "conduct evidencing either a willful or wanton disregard of the safety of others" and said "[o]rdinarily, such conduct should be conscious and intentional, creating an unreasonable risk of harm to others, where such risk is or should be known to defendants." *Id.* at 605. *See also* Iowa Code § 702.16 (1985) ("A person is *'reckless'* or acts recklessly when the person willfully or wantonly disregards the safety of persons or property."). (Emphasis in original.)

The definition we approved in *Kernes* is embodied in the uniform instruction which we have already mentioned was the basis for the one challenged here. The assignment is without merit.

■ III. A third instruction drew defendant's objection and precipitated another assignment of error. Under either the

2. Because the State does not raise the point we do not consider whether the instruction might have been too favorable to the defendant. Under some circumstances an act can be a proximate or legal cause although the injury would have occurred anyway. *See Restatement (Second) of Torts* § 432(2) comment (d) (1965).

State's or the defendant's version of the facts it was important to instruct the jury about the relationship between murder and intoxication. In doing so the trial court included the following:

You are instructed that no amount of voluntary use of intoxicants can excuse a murder and reduce a murder to manslaughter.

Defendant objects to this language. He contends he harmed Egan only because he was drunk, not because of any malice aforethought. He thinks the jury should have been told it should consider his intoxication in determining whether he acted with malice aforethought.

 It has long been the general rule in Iowa that, although voluntary intoxication cannot constitute a defense to a crime, it may negate criminal intent if such intent is an element of the crime charged. *State v. Watts,* 244 N.W.2d 586, 590 (Iowa 1976); *State v. Linzmeyer,* 248 Iowa 31, 35, 79 N.W.2d 206, 208 (1956). Voluntary intoxication may not, however, reduce a charge when the crime does not require a specific intent. *State v. Pierce Wilson,* 166 Iowa 309, 319, 144 N.W. 47, 51–52 (1913). Thus, where the defendant has been charged with second-degree murder, a general intent crime, the defendant's voluntary intoxication cannot negate malice aforethought and reduce the crime to manslaughter. *State v. Hall,* 214 N.W.2d 205, 209 (Iowa 1974); *see also* 40 Am.Jur.2d *Homicide* § 129, at 421 (1968) ("The rule followed by most courts is that intoxication will not reduce a homicide from murder to manslaughter ... as between murder in the second degree and manslaughter, intoxication of the offender is generally not regarded as a legitimate inquiry."); 40 C.J.S. *Homicide* § 5, at 831 (1944); *see generally* Annot., 73 A.L.R.3d 98 (1976).

 Under our holding in *Hall* the trial court was clearly correct in informing the jury that "no amount of voluntary use of intoxicants can reduce murder to manslaughter." But defendant thinks *Hall* was overruled by the subsequent enactment of Iowa Code section 701.5. That statute provides:

The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act *or in proving any element of the public offense with which the person is charged.*

(Emphasis added.)

In *State v. Collins* we said "section 701.5 is substantially a codification of prior law." 305 N.W.2d 434, 437 (Iowa 1981). We restated the rule that "intoxication is ... evidence to be considered on the issue of intent." *Id.* But we said nothing in *Collins* to suggest section 701.5 allows intoxication to negate malice aforethought. *See also State v. Aguilar,* 325 N.W.2d 100, 103 (Iowa 1982) (citing *Collins*).

Section 701.5 contains but a single sentence. The concluding phrase, the one on which defendant relies, must be read in context. It and the phrase which immediately precedes it modify the introductory language which states that intoxication "neither excuses the person's act nor aggravates the person's guilt." We do not think the exception allowed by the last phrase was intended to change our longstanding rule. *See Wilson v. Iowa City,* 165 N.W.2d 813, 822 (Iowa 1969) ("[A] statute will not be presumed to overturn long-established legal principles, unless that intention is clearly expressed or the implication to that effect is inescapable."). Rather, the last phrase of section 701.5 was added to make it clear that nothing in the section precluded prosecutors from showing intoxication as a part of "proving any element" of an offense. In some offenses of course, such as operating a motor vehicle while intoxicated under section 321.-281, intoxication is an element. The phrase did not change our rule in *Hall*; the assignment is without merit.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.