Benjamin Perry CALDWELL, Appellee,

v.

STATE of Iowa, Appellant.

No. 91–875.

Supreme Court of Iowa.

Dec. 23, 1992.

Bonnie J. Campbell, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., and J. Patrick White, County Atty., for appellant.

Sally Weyer of Bergan & Weyer, Iowa City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

In 1984, Benjamin Caldwell was convicted of second-degree murder, and we affirmed. *State v. Caldwell,* 385 N.W.2d 553 (Iowa 1986) (*Caldwell I*). Caldwell later filed an application for postconviction relief, Iowa Code ch. 663A (1985), alleging ineffective assistance of counsel. His principal complaint was that his attorney had rejected an offer from the State to accept a guilty plea to voluntary manslaughter. The district court agreed and ordered the State to either allow Caldwell to plead guilty to voluntary manslaughter or be tried again.

The State appealed the court's finding of ineffective assistance of counsel and its mandate to the State to accept a guilty plea to voluntary manslaughter, claiming the former was an error of law and the latter was beyond the court's authority. The court of appeals affirmed. We granted further review and now vacate the court of appeals decision and reverse the judgment of the district court.

The facts are set out in *Caldwell I,* 385 N.W.2d at 555. On the night of the killing, Caldwell and Ellen Egan, his live-in girlfriend, attended several Halloween parties in Iowa City. As they progressed from one party to another, they became increasingly intoxicated. At one of the parties, they quarreled, and Caldwell left to go home. Egan went to another party, and as she left that party, she tripped and fell down a stairway. She did not appear to be hurt at the time.

When Egan arrived home, she was confronted by Caldwell who demanded to know where she had been. They were still intoxicated. Caldwell was angry because Egan stayed at the party after he left, and he accused her of being with another man. A physical altercation followed, and Caldwell shoved and slapped Egan. When Egan attempted to escape, Caldwell hit her head against the bathroom door several times.

Caldwell stopped striking Egan when she began to bleed from her nose. She remained conscious and went upstairs to their bedroom. At some point she collapsed. Caldwell picked her up, laid her on the bed, and went to bed himself. He awoke at about 5 a.m. and noticed that he could not awaken Egan. He called an ambulance, but paramedics were unable to revive her.

Expert testimony showed that Egan's skull had not been fractured, and she did not suffer any massive blows that alone could have been responsible for her death. While there was strong evidence that the cause of death was the blows inflicted by Caldwell, there was not a definitive agreement among the experts as to whether her death was caused by Caldwell or by her earlier fall down the stairs. This is important because it bears on causation, an issue that became relevant in Caldwell's decision to go to trial.

A party urging ineffective assistance of counsel has the burden of proof, and there is a presumption that counsel was competent. *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1983). The applicant must show that (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent that it denied the defendant a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984); *Jasper v. State*, 477 N.W.2d 852, 855 (Iowa 1991); *Greiman v. State*, 471 N.W.2d 811, 814 (Iowa 1991). Mere mistakes in judgment or erroneous trial strategies do not necessarily amount to ineffective assistance of counsel. *Jasper*, 477 N.W.2d at 855.

The gist of Caldwell's argument, and the ground on which the district court granted relief, is that Caldwell's trial counsel, Leon Spies, had failed to properly advise Caldwell in respect to a proposed defense of intoxication. Specifically, Spies had failed to advise Caldwell that intoxication was not a defense to a charge of second-degree murder because intoxication bears only on specific intent, an element not found in second-degree murder.

The State counters that this issue was far from clear at the time of Caldwell's original trial. While this court in *State v. Collins*, 305 N.W.2d 434 (Iowa 1981), had earlier held that intoxication could not be a basis for an insanity claim, the issue of whether intoxication was relevant on the elements of second-degree murder was still in some doubt. This uncertainty arose from language in Iowa Code section 701.5, which provides:

> The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act *or in proving any element of the public offense with which the person is charged.*

(Emphasis added.)

Malice, of course, is an element of second-degree murder. *See* Iowa Code §§ 707.1–.3. Caldwell's trial counsel testified at the postconviction hearing that he believed there was a reasonable chance that this court would interpret the emphasized language of section 701.5 to allow evidence of voluntary intoxication on the issue of malice, although this was not permitted at common law. *See Caldwell I,* 385 N.W.2d at 557; *State v. Pierce Wilson,* 166 Iowa 309, 319, 144 N.W. 47, 51–52 (1913). Defense counsel requested an instruction embodying that concept; however, the instruction was rejected.

Caldwell responds that section 701.5 is merely a codification of the common law, that intoxication was not relevant on the

question of malice, and his trial attorney should have known that.

Despite the fact that the trial judge rejected Caldwell's intoxication theory, it was not clear at that time whether section 701.5 changed the common law. In fact, it was not until Caldwell's original appeal that his attorney's argument for an expanded application of intoxication evidence was specifically rejected by this court. In *Caldwell I*, 385 N.W.2d at 557, this court for the first time held that section 701.5 did not expand the role of intoxication in showing "any element of the public offense" and did not permit evidence of intoxication to negate malice.

Caldwell's attorney had an additional reason for relying on intoxication. He believed that, by showing Caldwell to have been highly intoxicated at the time of the confrontation, he might successfully mitigate Caldwell's acts in the eyes of the jurors. The prosecuting attorney agreed that this was a reasonable trial strategy, one which she characterized as the "sympathy" factor.

A third reason for defense counsel's rejection of voluntary manslaughter concerned the element of causation. A widely recognized forensic pathologist testified at the trial that it was possible that it was not Caldwell's acts that caused Egan's death, but rather her fall earlier in the evening. Caldwell's trial counsel believed that, if the jury found reasonable doubt on the issue of causation, Caldwell could not have been convicted of any crime.

As the Supreme Court has noted,

[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (citations omitted).

Caldwell's trial strategies (to seek a change in the law regarding the defense of intoxication, to insert the "sympathy" factor through intoxication evidence, and to attack the State's proof on causation) were all reasonable. We consistently avoid second-guessing of defense counsel's strategies. *See, e.g., State v. Kraus*, 397 N.W.2d 671, 674 (Iowa 1986); *Sallis v. Rhoads*, 325 N.W.2d 121, 123 (Iowa 1982).

We hold that trial counsel's performance was not outside the range of normal competency, and therefore, Caldwell has failed to establish the first prong of an ineffective assistance claim. We vacate the court of appeals decision, reverse the judgment of the district court, and remand with instructions to dismiss the postconviction petition.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; REMANDED FOR DISMISSAL.