James W. BETTIS, Applicant–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 94–1680.

Court of Appeals of Iowa.

Feb. 28, 1996.

Troyce A. Wheeler, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown and Douglas R. Marek, Assistant Attorneys General, and Verd Bailey, County Attorney, for appellee.

Considered by HAYDEN, P.J., and SACKETT and HUITINK, JJ.

SACKETT, Judge.

James Bettis appeals the district court decision denying his application for postconviction relief. Bettis, who was charged and convicted of first-degree murder for the killing of Cynthia Borton, claims his trial attorney was not effective. He advances his trial attorney (1) should have filed a motion to suppress his confession, (2) should have filed a motion in limine to assure evidence of other crimes he committed did not come into evidence, and (3) should not have asked questions that allowed prejudicial and otherwise inadmissible evidence in the trial. Bettis also contends his appellate counsel on direct appeal was not effective because he failed to raise the issues now argued. We affirm.

Bettis was only eighteen years old when he came under investigation for Borton's murder. Borton's corpse was found in her home on September 6, 1988. She had been stabbed twenty-nine times and the wounds caused her death. Her husband was the primary suspect for five months.

John Jackson, Bettis's friend, told agents of the Iowa Division of Criminal Investigation he spent time with Bettis on the evening of January 26, 1989, and, at that time, Bettis admitted to him he killed Borton. He said Bettis explained he planned the killing for a week because Borton would be the easiest person he knew to kill. Jackson said Bettis told him on September sixth he went to Borton's home asking her to serve as a reference on a job application. Jackson related Bettis said when Borton went to get him a glass of water, he wrapped his arm around her neck and slit her throat twice, and Borton dragged him across the floor toward the telephone. Jackson said Bettis related he ripped the cord out of the wall, flipped Borton over, and finished stabbing her repeatedly in the chest area. Jackson said Bettis then said he washed his hands and left after imbedding a two-pronged fork in her throat.

Bettis subsequently agreed to be interviewed on February 1, 1989, by a Division of Criminal Investigation polygraph examiner in Des Moines. After the test, the polygraph examiner told Bettis his answers were not truthful. Bettis then told the polygraph examiner essentially the same story he had told Jackson. Bettis subsequently told the story to other agents. He further told them where

he had buried a black and gold folding knife.[1] No prior trial motions were filed to suppress Bettis's confession or to preclude admission of evidence Bettis set fires.

Bettis's confession was admitted into evidence at the criminal trial. Also admitted into evidence was a note found on November 30, 1988, at the scene of an attempted arson in the Shenandoah City Hall, which stated:

> Compliments of Night Stalker. Broad Street, Anderson pickup and Cynthia Borton isn't nothing compared to what's next. Night Stalker.

This note had Bettis's fingerprints on it. Broad Street and Anderson's pickup were the scenes of previous fires.

In addition, the State presented into evidence three letters which Bettis had written while in jail. In these letters Bettis stated he hated his father and had planned to kill him. Bettis further wrote he was afraid to kill his father, and so he decided to kill Borton and he pretended she was his father.

Bettis was convicted of first-degree murder and sentenced to life imprisonment. The supreme court affirmed his conviction. *State v. Bettis*, 473 N.W.2d 208 (Iowa 1991) (unpublished). The only issue Bettis raised on his direct appeal was there was not sufficient evidence connecting him to the killing to corroborate his inculpatory statements. The focus of the argument was many persons knew the facts of the crime, Bettis confessed to the crime to get out of his parents' home, and there was not evidence connecting Bettis to the scene of the crime.

On July 22, 1991, Bettis filed an application for postconviction relief. Bettis claimed he received ineffective assistance of appellate counsel and trial counsel. The district court denied his request for relief. Bettis now appeals.

A proceeding for postconviction relief is a civil action and is triable at law. *Overton v. State*, 493 N.W.2d 857, 858 (Iowa 1992). Where a postconviction applicant asserts violations of constitutional safeguards, such as the right to counsel, an appellate court makes its own evaluation of the totality of circumstances in a de novo review. *Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991).

An applicant is generally barred from assigning grounds for relief which were not asserted on direct appeal. *See Collins v. State*, 477 N.W.2d 374, 376 (Iowa 1991). However, a claim of ineffective assistance of counsel may be raised for the first time in a postconviction proceeding if the applicant establishes by a preponderance of the evidence sufficient reason for not having raised the issue previously and also establishes prejudice resulting from the alleged errors. *Id.*

To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied defendant a fair trial. *Caldwell v. State*, 494 N.W.2d 213, 214 (Iowa 1992). Representation by counsel is presumed competent, and a postconviction applicant has the burden to prove by a preponderance of the evidence that counsel was ineffective. *Jones*, 479 N.W.2d at 272.

Concerning deficiency of performance, the ultimate test is whether counsel's performance was within the range of normal competency. *See Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989). Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Kane v. State*, 436 N.W.2d 624, 627 (Iowa 1989).

Concerning proof of prejudice, applicant must show counsel's failure worked to his substantial and actual disadvantage to the end there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Brewer*, 444 N.W.2d at 83.

Bettis claims he received ineffective assistance of appellate counsel due to counsel's failure to raise the issue of ineffective assistance of trial counsel on appeal. Thus, to determine whether Bettis received ineffective assistance of appellate counsel, we turn to his

---

1. The evidence at trial was the knife was consistent with a knife that could have caused many, if not most, of the stab wounds Borton received, but many knives could have caused the injuries.

claims of ineffective assistance of trial counsel.

■ Bettis claims his trial counsel was not effective because he failed to file a motion to suppress his confession. He believes his confession was involuntary and would have been suppressed if a motion had been made.

Bettis was an eighteen-year-old high school drop-out living with his parents when interrogated by agents of the Division of Criminal Investigation. His life experiences were limited. Bettis claims he was prone to grandiose feelings and exaggeration. Division of Criminal Investigation agents confronted him at the police station, questioned him for an hour, and then took him to Des Moines where he was given a polygraph examination. He was told his test showed deception. Bettis was then questioned further and gave the inculpatory statements. Bettis says, while he was told he could leave, he had no practical means of returning home. He said his will was overborne and the confession was not voluntary and not admissible.

At the postconviction hearing, Bettis testified he confessed to the crime because he was not getting along with his parents and had wanted to get out of the house. Bettis's trial counsel did not file a motion to suppress the confession.

Bettis contends, in failing to do so, his trial counsel did not preserve error for the issue on appeal. Bettis also contends the failure to object to the confession resulted in a need for his trial counsel to question the polygraph examiner at trial and this prejudiced his case. Bettis contends his trial attorney was not effective in doing so because it allowed in evidence of his prior bad acts, namely evidence of fires he had set, to come before the jury. This evidence came in through admission of the note left at the Shenandoah City Hall and through the questioning of the polygraph examiner. Trial counsel did not file a pre-trial motion in limine, but did move during the trial to exclude evidence Bettis had set fires. The trial court admitted the note into evidence finding the probative value of this note, which mentioned Borton's murder, outweighed its prejudicial effect. The court sustained Bettis's motion to exclude other evidence of arson.

During the State's direct examination of the polygraph examiner, the witness volunteered Bettis admitted he had set fires. Defense counsel objected. The trial court sustained the objection. The polygraph examiner then made another voluntary comment, "He also advised me that he started a fire at the—." The court repeated it had sustained the objection. Defense counsel renewed its motion to exclude evidence of the fires. The trial court sustained the motion and, at defense counsel's request, admonished the jury to disregard any evidence of separate offenses.

Later, the State cross-examined Bettis concerning the fires utilizing the note left in the Shenandoah City Hall. Bettis's defense counsel did not object to these questions on cross-examination. His defense attorney had, on June 30, 1989, taken a discovery deposition of the polygraph examiner and questioned him about his questions to Bettis and Bettis's ultimate confession.

Bettis says, had his attorney made a motion to suppress, the issue would have been preserved for appeal and, equally important, it would have eliminated the need of his trial attorney to question the polygraph examiner before the jury, which interrogations he claims eliminated an opportunity for a not guilty verdict.

Bettis's trial counsel testified he discussed with Bettis the question of bringing up the polygraph examination in the cross-examination of the polygraph examiner. The trial attorney said he wanted to present this evidence to show Bettis's confession after the polygraph examination was coerced.

■ Where a defendant is custodially interrogated without the presence of an attorney, the State carries the burden of proving, by a preponderance of the evidence, the statement was voluntary. *State v. Edman*, 452 N.W.2d 169, 170–71 (Iowa 1990). The test for voluntariness is whether the totality of circumstances demonstrates the statement was the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor

his capacity for self-determination critically impaired. *State v. Vincik,* 398 N.W.2d 788, 790 (Iowa 1987). Coercive police activity is a necessary predicate to the finding a confession is not voluntary under the Fourteenth Amendment. *Id.*

Bettis was advised of his constitutional rights prior to questioning by the agents and signed a statement waiving them.

We agree with Bettis, if his trial attorney were of the opinion the confession was coerced, that issue should properly have been raised by a motion to suppress the confession. We do not find, however, Bettis has shown the necessary prejudice to succeed on this issue.

Bettis's last contention is the cumulative effect of the various acts and omissions of his trial, appellate, and postconviction counsel has combined to deny him his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments, namely his right against self incrimination, his right to effective representation by an attorney, and his right to due process of the law. Bettis claims the cumulative effect of the various violations of his constitutional rights constitutes prejudice. He states, if these errors had not been made, a different verdict was probable.

There was sufficient other evidence in the record to convict Bettis even if his counsel had committed errors. Jackson testified Bettis told him in detail how he had killed Borton. Also, Bettis's letters which he wrote in prison admitted he had killed "the lady."

We affirm the decision of the district court denying Bettis's application for postconviction relief. Costs of this appeal are assessed to Bettis.

**AFFIRMED.**