# IN THE COURT OF APPEALS OF IOWA

No. 15-0596
Filed May 25, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**SCOTT ANTHONY SUDBECK,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Emmet County, Patrick M. Carr, Judge.


　　　　Defendant appeals conviction for first-degree murder, challenging the sufficiency of the evidence and contending the district court erred in denying his motion for a new trial. **AFFIRMED.**


　　　　Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.


　　　　Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

On February 26, 2014, Scott Sudbeck shot and killed his ex-girlfriend, Michaela Jordan. He was tried and convicted of murder in the first degree in violation of Iowa Code sections 707.1 and 707.2 (2013). On appeal, he challenges the sufficiency of the evidence. He relatedly contends the district court erred in denying his motion for new trial on the basis the conviction was against the weight of the evidence.

I.

Sudbeck and Jordan had been in a long-term relationship. Until January 2014, they resided together. At that time, their relationship ended, and Jordan obtained a no-contact order against Sudbeck when he was charged with a different crime committed against her. Jordan and her four children continued to live in the home she had shared with Sudbeck.

Sudbeck was experiencing several personal problems around this time. He was prohibited from contact with Jordan. She continued to reside in his home; he had to find another residence. He was having problems with his employer. He was in a dispute with the Internal Revenue Service. He was behind on his child support, and he was disputing a child support calculation. He was being asked to pay back some amount of workers' compensation benefits. On the morning of the shooting, he learned his son might have leukemia. Sudbeck was drinking heavily—five to seven large vodka drinks per day. He had been doing this for a long period of time prior to the shooting.

On the evening of February 26, Sudbeck testified, he left his home shortly before 8:00 p.m. to visit a friend. The friend, however, was not home. While

driving, Sudbeck observed Jordan drive by, and he decided to drive to her home to speak with her. He knew in doing so he would be in violation of the no-contact order. Sudbeck arrived at the home and parked away from the residence. He walked up to the front of the home. He was carrying a .45 caliber pistol with him. He held the pistol in his right hand—his dominant hand—without any attempt to conceal it. Jordan was still outside at this time. Sudbeck and Jordan engaged in a short conversation outside the front door. Jordan then told Sudbeck to leave.

The State and the defendant's versions of events diverge at this point. The State contends Sudbeck intentionally shot and killed Jordan as she turned to go inside. Sudbeck testified Jordan turned to go into the home and he turned to walk back to his truck. As he did so, he testified, he threw his hands up and the gun accidentally discharged. He testified he did not turn back to see where the bullet went or whether it struck anyone or anything. He left the property and returned home.

The bullet struck Jordan in the back, continued through a lung, hit her jugular vein, and exited through her neck. She entered the home, where her mother, brother, and children were. Jordan said, "He shot me." Jordan's mother asked, "Who shot you, baby?" Jordan replied, "Scott shot me, Mommy." Jordan took a few more breaths and died in her mother's arms.

Sudbeck spent the rest of the evening communicating with another woman, Jennifer Yates, by text message and telephone until 2:30 a.m. At no time did he mention to Yates that his gun discharged. He did message to her several statements indicative of a guilty mind. He told Yates, "I'm sorry and goodbye." He also messaged, "After tomorrow if you hear from me, I'll be

surprised." He also messaged her, stating, "I'm gonna go away." He was arrested in the early morning.

During their investigation, the police observed a bullet hole in the front door of Jordan's residence and a corresponding hole in the interior closet door. The police found a .45 caliber bullet on the top shelf of the closet. They found a .45 caliber shell casing near the front steps. At Sudbeck's residence, police discovered a .45 caliber Hi-Point brand handgun in between stacked boxes. Forensic analysis showed the bullet found in the closet could only have been fired from a .45 caliber Hi-Point brand handgun. The gun was equipped with two safety mechanisms—one active, one passive[1]—to protect against accidental firing. The gun required 8.5 pounds of pressure to fire, which "could be a little heavy for a pistol," according to an expert's testimony. While awaiting trial in jail, Sudbeck told two cellmates he accidentally shot his girlfriend.

## II.

Sudbeck challenges the sufficiency of the evidence supporting his conviction. Challenges to the sufficiency of the evidence are reviewed for errors at law. *See State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). The court will uphold a jury verdict if supported by substantial evidence. *See id.* Evidence is considered substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *See id.* The court reviews the evidence, including legitimate inferences and presumptions that may fairly be deduced from the evidence, in the light most favorable to the State. *See id.* The State has the

---

[1] The "passive" safety mechanism prevents the gun from firing if the magazine is not properly inserted or not inserted at all.

burden to prove every fact necessary to constitute the claims with which the defendant is charged. *See id.* The evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. *See id.*

When reviewing challenges to the sufficiency of the evidence, we view the evidence in light of the unchallenged instructions provided to the jury. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). The jury was instructed the State had to prove the following to convict the defendant of murder in the first degree:

1. On or about February 26, 2014, the defendant shot Michaela Jordan.
2. Michaela Jordan died as a result of being shot.
3. The defendant acted with malice aforethought.
4. The defendant acted willfully, deliberately, premeditatedly, and with a specific intent to kill Michaela Jordan.

Sudbeck challenges the sufficiency of the evidence as to the third and fourth elements. Sudbeck argues he accidentally shot Jordan and that he did not know he accidentally shot her because he never turned to see where the gun discharged. In support of his argument, he states he did not try to flee the area, did not dispose of the gun, and did not mention the shooting to Yates. In his telling, he only learned Jordan was shot after he was arrested. He further argues his habitual handling of his gun shows his specific brandishing of it here does not demonstrate premeditation.

Malice aforethought is a fixed purpose or design to do some physical harm to another that exists prior to the act being committed. *See State v. Artzer*, 609 N.W. 2d 526, 529 (Iowa 2000). It does not need to exist for any specific time before the act occurs. *See id.* at 530. The relationship between malice

aforethought and the homicidal act "is more accurately characterized as a causal relationship rather than as a temporal relationship." *State v. Bentley*, 757 N.W.2d 257, 265 (Iowa 2008). "In other words, the malice must result in the homicidal act." *Id.* The district court issued the following jury instruction:

> "Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of the Defendant, and the means used in doing the wrongful and injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion. "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time.

The jury instruction correctly set forth the law.

Premeditation is "to think or ponder upon the matter before acting." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003). Like malice aforethought, premeditation need not exist "for any particular length of time." *Id.*

When viewed in the light most favorable to the State, there is sufficient evidence Sudbeck acted with malice aforethought. There was acrimony between the parties. They had separated only a month prior, at which time Jordan obtained a court order prohibiting Sudbeck from contacting her. Evidence of an acrimonious relationship is "highly relevant to the issue of malice aforethought." *State v. Newell*, 710 N.W.2d 6, 21 (Iowa 2006). Sudbeck used a deadly weapon to carry out the murder. The use of a deadly weapon supports an inference of malice. *See State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001).

When viewed in the light most favorable to the State, there is sufficient evidence Sudbeck acted willfully, deliberately, premeditatedly, and with a specific intent to kill Jordan. Sudbeck drove himself from his residence to Jordan's residence on a cold and dark night. *See State v. St. Clair*, 301 P.2d 752, 755 (Utah 1956) (finding late-night trip to victim's home supported inference of premeditation). He brought with him a loaded .45 caliber pistol. *See State v. Hamilton*, 309 N.W.2d 471, 480 (Iowa 1981) (discussing defendant's decision to transport gun with him to victim's residence as supporting inference of premeditation); *State v. Matheson*, 261 N.W. 787, 792 (Iowa 1935) (finding jury's inference of premeditation warranted by defendant's travel to home of intended victim armed with revolver). Sudbeck shot Jordan in the back with the handgun. *See Reeves*, 636 N.W.2d at 25 (stating the use of a deadly weapon can support an inference of deliberation and premeditation). The gun was equipped with both active and passive safety systems designed to prevent accidental discharge of the weapon, which Sudbeck would have had to overcome before firing the weapon. The trigger required 8.5 pounds of pressure before firing, which the State's expert testified was heavy, militating against this being an accidental shooting. Finally, Sudbeck's testimony that he spun around, accidentally discharged his pistol with the effect of killing his girlfriend, and was so unconcerned that he never bothered to turn around to see whether he hurt anyone is so implausible that it supports an inference of premeditation. *See State v. Nance*, 533 N.W.2d 557, 563 (Iowa 1995) ("The evidence as to how the gun 'accidentally' discharged could be rejected by the jury as a false story. The use of a false story could also be treated as an implied admission.").

III.

Sudbeck contends the district court erred in denying his motion for new trial. A district court has broad discretion to rule on motions for a new trial contending the verdict is contrary to the weight of the evidence. *See State v. Nichter*, 720 N.W.2d 547, 559 (Iowa 2006). We will reverse only when the district court abuses its discretion. *See id.* To prove such abuse, Sudbeck must show the court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014).

The district court may grant a new trial when "the verdict is contrary to law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). This means "contrary to the weight of the evidence," rather than unsupported by substantial evidence. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Weight of the evidence means a determination by the trier of fact "that a greater amount of credible evidence supports one side of an issue or cause than the other." *Id.* at 658.

Sudbeck argues he lacked the necessary malice aforethought and specific intent for murder in the first degree. Specifically, he argues his intoxication negates the element of specific intent. "The difference between first-degree murder and second-degree murder is that the former requires specific intent to kill, whereas the latter requires only a general criminal intent." *State v. Klindt*, 542 N.W.2d 553, 555 (Iowa 1996). Evidence of intoxication may negate specific intent. *See State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986). Courts "have traditionally required a high level of intoxication to support a finding of no specific intent." *State v. Guerrero-Cordero*, 861 N.W.2d 253, 259 (Iowa 2015). The

intoxication "must be to the extent that the designing or framing of such purpose is impossible." *Id.* "[T]he defense is not sustained by mere evidence of intoxication." *Id.* at 261.

We cannot conclude the district court abused its discretion in denying Sudbeck's motion. Sudbeck was drinking heavily on the night in question (four or five large drinks), and he did have a problem with alcohol, as his family members and Yates testified. However, Sudbeck testified he had been drinking in such a manner for three years. It does not seem unreasonable to believe he had built up a tolerance to heavy drinking. Indeed, by his own admission, he had not drunk as much on the day of the shooting as he did on a typical day. There is no evidence his drinking impaired his faculties on that day. He was able to drive to his friend's house. He was able to drive to Jordan's house. He communicated, without any apparent impairment, by phone and text message immediately before and after the shooting. Yates testified he did not sound intoxicated on the phone.

## IV.

The jury's function "is to sort out the evidence and place credibility where it belongs." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (citation omitted) (internal quotation marks omitted). There is no reason to disturb the jury's verdict in this case.

**AFFIRMED.**