# IN THE COURT OF APPEALS OF IOWA

No. 19-0377
Filed December 16, 2020

**CHRISTOPHER LEE PERRY,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly,

Judge.

Applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Geneva L. Williams of Williams Law Office, PLLC (until withdrawal), Cedar

Rapids, and Peter Stiefel, Victor, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.

Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**BLANE, Senior Judge.**

Christopher Lee Perry was convicted of first-degree arson and criminal mischief in the first degree.[1]  In an application for postconviction relief (PCR), he claimed his criminal trial attorney was ineffective.  The district court denied the application, finding trial counsel's conduct was reasonably competent trial strategy or Perry was not prejudiced.  Upon our de novo review, we determine trial counsel breached an essential duty in failing to raise the intoxication defense, but in other respects was not incompetent and Perry was not prejudiced by counsel's conduct. We affirm.

I.     Factual and procedural background.

On April 28, 2013, Perry was living with his girlfriend Tara McReynolds in an apartment in Cedar Rapids.  McReynolds testified Perry was drinking and using synthetic marijuana known as K2 that day.  They got into a heated argument precipitated by her underage cousin telling McReynolds that Perry had kissed her. Finding this objectionable, McReynolds was going to break up with Perry.  At one point during their argument, Perry had McReynolds in a chokehold with his hands on her neck.  As McReynolds was leaving, Perry told her, "I'm going to torch your shit" before immediately slamming the door and dead-bolting it, locking McReynolds out of their apartment.  Ten minutes later, their apartment was on fire.

Residents of other apartments testified at trial that, during the day in question, they heard Perry and McReynolds arguing loudly and Perry yell something to the effect of "I'm going to torch all of your shit, you f-----g bitch" or

---

[1] Respectively, a violation of Iowa Code sections 712.1 and 712.2 (2013), a class "B" felony, and Iowa Code section 716.3(1)(a), a class "C" felony.

"You stupid bitch, I'm going to torch [or burn] all your shit," before slamming the apartment door. Two other neighbors were outside grilling when they heard a woman yell "Fire." They ran to Perry's apartment but found that his door was locked. After helping McReynolds's mother, who lived in a close-by apartment, to safety, they returned to find Perry's door unlocked. They observed Perry on the floor in his apartment, crying and covered in soot. Perry told them that he had discovered the apartment was on fire when he came out of the shower. The men pulled him out of the apartment and took him outside.

A paramedic who responded to the scene treated Perry in the ambulance. She described him as confused, upset, smelling of alcohol, and exhibiting first-degree and second-degree burns. Perry told her he set his girlfriend's clothes, and then himself, on fire. When Perry was interviewed by the emergency room nurse, he admitted drinking but denied using any drugs.

Captain Allen Brockhorn of the Cedar Rapids Fire Department investigated the fire in Perry's apartment and determined that the fire originated in the back bedroom, in and around the bed and/or on the floor. He and his arson dog did not detect the use of an accelerant, but he noted an aerosol can near the point of origin, which was "highly suggestive" of its use. He concluded that the fire was likely started with an open flame. He also ruled out a fallen lit cigarette, faulty wiring, malfunctioning appliances, spontaneous combustion, or a "Molotov cocktail" as sources of the fire. Brockhorn interviewed Perry the day after the fire, and Perry claimed to have no memory of the fire, but he did not unequivocally deny setting it.

Perry was charged with arson in the first degree and criminal mischief in the first degree. His trial attorney did not file a notice of intoxication defense. The jury found Perry guilty of both charges. Perry was sentenced to prison terms not to exceed twenty-five years on the arson charge and not to exceed ten years on the criminal mischief charge, to be served concurrently. We affirmed his convictions on direct appeal. *See generally State v. Perry*, No. 15-1949, 2017 WL 936092 (Iowa Ct. App. Mar. 8, 2017). He then filed the application for PCR. He raised four issues of ineffective assistance of trial counsel: (1) failure to raise intoxication as a defense; (2) failure to secure testimony at trial of an expert witness to rebut the State's expert that the fire was set intentionally; (3) failure to object to evidence that Perry put McReynolds in a "chokehold" and that he had allegedly kissed her under-aged cousin; and (4) failure to offer photographs at trial that would demonstrate to the jury a lack of intent on Perry's part to set the fire.[2]

At the PCR trial, Perry testified, as did his criminal trial attorney. Perry also submitted the deposition of his expert witness on intoxication, Dr. James J. O'Donnell, who opined that Perry was intoxicated to the extent he was incapable of forming the specific intent to set the fire. In its detailed ruling following the PCR trial, the court found: (1) trial counsel's decision to not raise an intoxication defense was trial strategy and within the wide range of professional competence; (2) trial counsel made a reasonable effort within professional competency to procure a fire expert; (3) trial counsel's decision to not object to "character evidence," as it was intrinsic evidence of the events, was reasonable trial strategy; and (4) Perry failed

---

[2] The first three issues were raised by PCR counsel; the fourth issue was raised pro se by Perry at trial.

to show prejudice and that there would have been a different outcome due to trial counsel not offering photographs of the fire. Perry appeals.

II.     Standard of review.

Ineffective-assistance-of-counsel claims involve constitutional issues and are therefore reviewed de novo. *State v. Booth-Harris*, 942 N.W.2d 562, 569–70 (Iowa 2020). In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate both that "(1) . . . trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Sauser v. State*, 928 N.W.2d 816, 818 (Iowa 2019) (citation omitted); *accord Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim. *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019). Ultimately, the test of ineffective assistance of counsel rests on whether counsel's performance was reasonably effective; the defendant must show that the performance fell below an objective standard of reasonableness such that his lawyer was not functioning as "counsel" as guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 688. The court measures the attorney's performance against "prevailing professional norms." *Id.* Additionally, the court begins "with the presumption that the attorney performed competently." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). Each claim is to be analyzed "in light of the totality of the circumstances." *Id.* at 142. And "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* When trial counsel's strategy is not reasonable, the court will find counsel failed in an essential duty. *State v. Tracy*, 482 N.W. 2d 675, 679 (Iowa 1992). Improvident

trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 2008). Discussion.

### A. Intoxication defense.

#### i. Breach of an essential duty.

Iowa Code section 701.5 provides for the defense of intoxication. Evidence of intoxication may negate specific intent, if such intent was an element of the crime charged. *State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986). Arson is a specific-intent crime; the State must prove that the defendant caused a fire or explosion "with the intent to destroy or damage property, or with the knowledge that property will probably be destroyed or damaged." Iowa Code § 712.1(1). A defendant must file a timely pre-trial notice in order to assert the intoxication defense at trial. *See* Iowa R. Crim. P. 2.11(11)(c).

Perry's criminal trial attorney acknowledges he did not file a notice of intoxication defense or attempt to raise the defense at trial. The attorney also testified that he believed the arson charge was not a specific-intent crime and that the intoxication defense did not apply. Perry contends that his trial counsel was ineffective in failing to pursue the intoxication defense. Perry also argues that failing to raise this defense was not a reasonable strategy decision.

There is no question that evidence supported Perry was intoxicated during the events surrounding the fire. However, as Perry's counsel pointed out in his PCR testimony, Perry maintained throughout his criminal case that he did not set the fire. When asserting the intoxication defense, the defendant must admit to committing the act. *State v. Rodriguez*, No.10-0039, 2011 WL 1814707, at *7

(Iowa Ct. App. May 11, 2011) ("An intoxication defense admits to the act, but negates whether the person acted with specific intent.") For this reason, trial counsel testified he made a strategic decision:

> Chris said he didn't start the fire, so intoxication would not be a defense if you're denying that you committed the act.
> . . . .
> . . . . But my theory of defense was that it was probably an accident and that Chris had fallen asleep while smoking or something like that, because even though he allegedly told Miss McReynolds that he was going to burn her stuff, it didn't make any sense that he would start a fire in his own apartment destroying his own stuff when he was inside with the door locked. It just didn't make any sense that he would have started the fire.

A review of Perry's attorney's closing argument discloses that he argued the fire was an accident:

> [I]f, in fact, there was an argument—which we aren't even conceding there was—if there was an argument in the afternoon and Chris went back to his apartment and was smoking—remember, he was a smoker; in fact, Tara said a chain smoker—if he was smoking a cigarette, fell asleep or whatever, and the cigarette set the bedding on fire, if the proper conditions were there and it took an hour, hour and a half, that would have put us to maybe 7 or 7:30, so that's a possibility.

The district court addressed Perry's claim:

> While [counsel] was clearly wrong in his belief that Arson in the First Degree was not a specific intent crime, and therefore an intoxication defense could have been raised, it remains that an intoxication defense would have been inconsistent with the theory that Taylor was presenting to the jury because an intoxication defense "admits to the act . . ." *Rodriguez*, [2011 WL 1814707, at *7 (noting "an intoxication defense would have been at odds with his main defense of identity")]. The court views [counsel's] approach as a decision of strategy, and therefore will not disturb it.

The court was correct in one regard—that the intoxication defense would have been inconsistent with Perry's denial that he started the fire. But this does not prevent trial counsel from presenting inconsistent theories of defense. In *State*

*v. Broughton*, our supreme court found it was error for the trial court to fail to instruct on an intoxication defense when requested by defendant's trial counsel, even though it was inconsistent with the alibi defense (that he did not commit the crime), which the defendant was also asserting. 425 N.W.2d 48, 51 (Iowa 1988). The supreme court held, after analyzing federal and state authority, that a defendant has the right to raise inconsistent theories of defense and the court must instruct on those if requested. *Id.* Perry's counsel could have raised and argued an intoxication defense even if inconsistent with Perry's denial that he started the fire.

But the intoxication defense was not necessarily inconsistent with trial counsel's alternative argument that Perry might have accidentally started the fire. That Perry had a right to raise an intoxication defense, whether inconsistent or not, does not mean that his counsel failing to raise the intoxication defense is automatically a breach of an essential duty. We must look at the totality of circumstances and determine if defense counsel's strategy choices were reasonable.

Perry's trial counsel explained, based on his forty-five plus years of trial experience, he found the intoxication defense was not well received by juries. It makes sense that a trial counsel would not want to argue inconsistent theories. To do so can create an enormous credibility problem between counsel and the jury, which counsel may well want to avoid. But the intoxication defense was not inconsistent with the accident theory counsel argued to the jury. When this is coupled with trial counsel's belief that the arson charge was not a specific-intent crime and therefore not subject to an intoxication defense, we find that counsel's

failure to pursue the intoxication defense was not a reasonable trial strategy and amounted to a breach of duty. *See Anfinson v. State*, 758 N.W.2d 496, 505–06 (Iowa 2008) (finding breach of duty where trial counsel's strategic decision was not based on reasonable professional judgment).

ii.     Prejudice.

We turn to the prejudice prong of the ineffective-assistance claim. Would it have made any difference if Perry's trial counsel had properly raised and argued an intoxication defense? There was evidence of Perry's drinking and using K-2, synthetic marijuana, during that day leading up to the fire adequate to support his being intoxicated. At the PCR trial, Perry's counsel submitted the deposition of his expert, Dr. O'Donnell, to support Perry's intoxication was to such a degree that Perry could not form the specific intent to start the fire.

In addressing Perry's sufficiency-of-the-evidence claim on direct appeal, our court discussed Perry's intoxication.

> Perry notes he was intoxicated at the time the fire started. In order to negate the specific-intent element of a crime, it is not enough that an offender is intoxicated; the offender must be so intoxicated as to be unable to reason and incapable of forming a felonious intent. The evidence does not support such a finding here. Despite being intoxicated at the time the fire began, Perry made his intentions clear and was able to follow through on his threat. Viewing the record evidence in the light most favorable to the State, there is substantial evidence by which a reasonable fact finder could determine that Perry intentionally set the fire.

*Perry*, 2017 WL 936092, at *2 (citation omitted). Perry made a clear statement of intent. He then retreated into the apartment where McReynolds's property was located, bolted the door and, within minutes, residents saw smoke coming from the apartment.

"If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142. For the prejudice prong in a claim of ineffective assistance of counsel, "the applicant must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 143 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An applicant must establish the prejudice prong by a preponderance of the evidence. *Ledezma*, 626 N.W.2d at 142.

As we noted in our earlier opinion, "[t]he evidence does not support" that Perry was "so intoxicated as to be unable to reason and incapable of forming a felonious intent such a finding here." Perry stated his intention. He admitted to the paramedic who treated him after the fire that he started it. Perry was not prejudiced by his trial counsel's representation.

B. Failure to secure a trial expert.

Perry contends that had his trial counsel hired an expert he would have discovered that Perry suffered a severe level of intoxication so as to be incapable of forming the necessary intent to set the fire and should have presented this evidence at the criminal trial. Perry's trial counsel testified he obtained court approval for expenses to retain a fire-investigation expert to testify that the fire was not intentionally set and about his efforts to hire such an expert. Trial counsel did not pursue retaining an expert on intoxication. The district court found Perry's trial counsel was neither incompetent nor provided a lack of effort regarding securing an expert witness.

Although we do not agree with the district court regarding the retention of an expert, as Perry contends the expertise should have involved an intoxication expert not a fire-investigation expert, we are able to resolve this issue based on the prejudice prong. In the preceding section we determined that an intoxication defense would not have resulted in a different verdict. Perry suffered no prejudice in this regard.

### C. Failure to object to evidence.

Perry contends his trial counsel was ineffective for failing to object to evidence that Perry placed McReynolds in a "chokehold" and that he had kissed her underage cousin. He claims such evidence was objectionable as irrelevant and evidence of bad acts. *See* Iowa Rs. Evid. 5.403, .404(b). However, evidence portraying the defendant in a bad light may be admissible because it is inextricably intertwined with the crimes for which a defendant is being tried. *State v. Nelson*, 791 N.W.2d 414, 420–24 (Iowa 2010) (evidence of other crimes or acts may be admitted when a court "cannot sever this evidence from the narrative of the charged crime without leaving the narrative unintelligible, incomprehensible, confusing, or misleading").

We find that Perry's trial counsel was not ineffective for not objecting to this evidence. A review of the record shows that McReynolds's underage cousin's statement to McReynolds that Perry had kissed her was the basis for the argument between Perry and McReynolds, which then led to Perry's physical chokehold of McReynolds and Perry setting the fire. Even if Perry's trial counsel had lodged appropriate objections, the trial court would have properly overruled the objections and no prejudice occurred.

D.  Failure to offer photographs.

Finally, Perry argues his trial counsel was ineffective for failing to offer four photographs of the fire damage, which he claims would have demonstrated a lack of intent to set the fire.  Upon our de novo review, we agree with the district court that "such photographs could equally serve to prejudice Perry before the jury as they were graphic photographs of the crime scene."  Perry was not prejudiced by trial counsel not offering the photographs.

III.    Conclusion.

On our de novo review, we find even though Perry's criminal trial counsel breached a duty in failing to raise the intoxication defense, Perry was not prejudiced.  As to the other claims, Perry's counsel either did not breach a duty  or Perry suffered no prejudice.  We therefore affirm the denial of postconviction relief.

**AFFIRMED.**