**STATE of Iowa, Appellee,**

v.

**Jimmie Lee HODGES, Appellant.**

**No. 67658.**

Supreme Court of Iowa.

Nov. 24, 1982.

As Corrected Dec. 10, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

HARRIS, Justice.

The question in this appeal is whether a confession was precipitated by a police officer's suggestion that, by confessing, defendant would receive better treatment and less severe punishment than if he denied guilt and stood trial. We find the question must clearly be answered in the affirmative. Hence, we reverse defendant's murder conviction, based in part on evidence of the confession, and remand the case for a new trial.

Defendant was convicted of murdering Hugo Weidenpesch, Iowa Code §§ 707.1 and 707.2 (1981), an elderly housebound man, whose body was discovered in his Davenport home on March 29, 1981. Weidenpesch's throat had been slashed. His living room had been ransacked; various drawers were found open; papers were scattered around the room. A broken piggy bank was found on the living room floor; a broken door lock assembly was found on the kitchen floor.

A few days later defendant's mother went to the Davenport police department with defendant's bloodstained jacket. She told the police that the defendant had ad-

mitted to his Aunt Jacqueline that he killed Mr. Weidenpesch. The victim had been a neighbor of defendant. Based on this information the police decided to obtain a search warrant to enter defendant's home. Before it was obtained the police went to defendant at his home and asked him to come to the police station. Although he was not placed under arrest he did so.

At the station the defendant executed an exhaustive written waiver of rights and was thereafter questioned over a two hour period by four detectives. Defendant denied any involvement in the crime and asked to leave. The detectives then sought the advice of James Van Fossen, a lieutenant in the Davenport police department. Van Fossen spoke with the defendant alone for about a half hour. During this conversation Van Fossen told the defendant that if he would give a statement to the police "there would be a much better chance of him receiving a lesser offense than first degree murder." At this point defendant decided to confess the crime.

The police went over the contents of a statement with defendant for about an hour, after which it was taped. Defendant was again informed of his rights. The taping then took place after which defendant was arrested and placed in a cell. Van Fossen testified that the statement was transcribed and signed by the defendant the next day. The defendant testified he signed the statement some ten to fifteen minutes after the taping was completed.

Defendant's challenged statement recited that he knocked at the victim's door, and after a brief conversation the victim closed the door. The defendant then forced the door open, breaking the lock, and was confronted by the victim with a fishing knife. The defendant knocked the knife from Weidenpesch's hand, picked it up, looked at the old man, and then cut him across the left side of the neck. While the victim lay dying defendant looked around the living room, broke open the piggy bank, and fled.

There was considerable other evidence of defendant's guilt. His aunt quoted the defendant as saying he had killed a man and told her to "watch the news" for details.

The bloodstained jacket which defendant's mother had brought to the police was introduced at trial.

■ Evidence of defendant's confession was admitted over his timely objection. We assume it was considered by the jury in finding him guilty of first degree murder. On appeal his sole assignment is that the confession should not have been admitted because it was involuntary. In reviewing this claim we make an independent, de novo review of the totality of circumstances surrounding the confession. *E.g., State v. Jump*, 269 N.W.2d 417, 423 (Iowa 1978); *State v. Winfrey*, 221 N.W.2d 269, 272 (Iowa 1974).

We have pointed out the difference between voluntary waivers of constitutional rights and voluntary statements. *State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976). There is no claim here that defendant's waiver of his constitutional rights was involuntary. The only question is whether his statements were voluntary. In *Snethen* we said:

> In order to establish the voluntariness of a defendant's inculpatory statements, the State must demonstrate from the totality of circumstances that the statements were the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired. *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975).

*Id.* at 315.

■ In *State v. Munro*, 295 N.W.2d 437, 440 (Iowa 1980), we set forth the applicable standard:

> The test for determining the admissibility of confessions or inculpatory statements is voluntariness. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1961). This court determines the issue of whether officers have exercised coercion so as to render statements involuntary by examining the totality of the circumstances. We have explained this "totality of the circumstances" test in the following manner:

No one factor is determinative of the voluntariness of a confession which necessarily depends upon the totality of the circumstances of the individual case.

There is no talismanic definition of voluntariness. The "totality of the circumstances" encompasses the characteristics of the accused and the details of the interrogation process. The court determines the facts surrounding the inculpatory statement, assesses their psychological impact on defendant, and evaluates the legal significance of defendant's reactions.

Defendant's choice to confess must be essentially free and unconstrained with his will not overborne and his capacity for self-determination not critically impaired. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975) (citations omitted).

The burden is on the State to show by a preponderance of the evidence that the statement was voluntary. *Snethen,* 245 N.W.2d at 311.

■ Many factors bear on the issue of voluntariness. These include the defendant's knowledge and waiver of his *Miranda* rights, *State v. Munro,* 295 N.W.2d at 443; the defendant's age, experience, prior record, level of education and intelligence, *id.*; the length of time defendant is detained and interrogated, *State v. Jump,* 269 N.W.2d at 424; whether physical punishment was used, including the deprivation of food or sleep, *Munro,* 295 N.W.2d at 443; defendant's ability to understand the questions, *State v. Jump,* 269 N.W.2d at 424; the defendant's physical and emotional condition and his reaction to the interrogation, *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975); whether any deceit or improper promises were used in gaining the admissions, *Munro,* 295 N.W.2d at 443; any mental weakness the defendant may possess, *State v. Hahn,* 259 N.W.2d 753, 758 (Iowa 1977); *see generally Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973).

■ The question of voluntariness is a matter of sorting out the impetus for the inculpatory statement. To be admissible the statement must freely emanate from the mind of the speaker. If the statement is not the product of "rational intellect and free will," but results from a promise of help or leniency by a person in authority it is not considered voluntary and is not admissible. *State v. Hilpipre,* 242 N.W.2d 306, 310–11 (Iowa 1976); *State v. Franks,* 239 N.W.2d 588, 592 (Iowa 1976); *State v. Ware,* 205 N.W.2d 700, 703 (Iowa 1973); *State v. Mullin,* 249 Iowa 10, 14, 85 N.W.2d 598, 600–01 (1957). We often quote *Mullin* in stating the rule:

> [I]t seems clear these statements were such as might well raise in the mind of the accused the hope that if he made the so-called confession he would receive better treatment, less severe punishment, and more mercy than if he denied his guilt and was tried and found guilty of the offense by the jury. Statements so obtained consistently have been termed involuntary, not only by the courts of his jurisdiction, but throughout the country.

249 Iowa at 13, 85 N.W.2d at 600.

> [T]he statement by the officer "flattered the hope" of the defendant and was certainly in the nature of an inducement to speak or admit his guilt
>
> . . . .
>
> [A] confession wrung from the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration.
>
> . . . .
>
> [W]hen the officer or officers . . . explain just how it will be better or wiser for the accused to speak, these statements may suddenly become more than an admonishment and assume the character of an assurance or promise of special treatment which may well destroy the voluntary nature of the confession in the eyes of the law.

249 Iowa at 15–16, 85 N.W.2d at 601. The cases which condemn as involuntary statements precipitated by a promise of leniency were distinguished in *State v. Jump,* 269 N.W.2d at 427.

■ An officer can ordinarily tell a suspect that it is better to tell the truth. The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession. Ordinarily the officer's statements then become promises or assurances, rendering the suspect's statements involuntary. *Mullin,* 249 Iowa at 16–17, 85 N.W.2d at 601–02.

The State points out that the defendant here was an 18 year old laborer with ten years of education. He was advised of his rights immediately upon arrival at the police station. He signed a waiver of rights at 7:10 p.m. and agreed to make the statement at 9:00 p.m. The interview was thus short and within normal waking hours. The defendant "seemed very quiet" and was allowed to use the restroom. He never requested a lawyer or asked the questioning to cease. He indicated that he understood his *Miranda* rights both at the beginning of the questioning and just prior to making the statement.

On the other hand defendant was subjected to two hours of intense custodial interrogation. During that time he was confronted with incriminating evidence by his questioners and told they believed he was involved in the murder. It is against this background that the statements of Van Fossen should be considered.

Van Fossen spoke to the defendant alone for about one half hour, during which time he reviewed the questioning that had taken place. He told defendant the officers who had questioned him believed he had committed the murder and wanted to confess. Van Fossen listed the evidence that had been gathered, including the coat with blood on it brought in by defendant's mother. He referred to defendant's aunt who had told the police defendant admitted he committed the crime. He said a search warrant had been obtained and a pair of shoes had been recovered which also pointed to defendant. Van Fossen then continued:

> [A]nd I told him at that time that, you know, it's now or never, you know, "You either give a statement to your side of what happened or we'll go through our evidence and obtain a warrant," and I told him I was sure that the warrant would be for first degree murder.
>
> . . . .
>
> I explained to him . . . that circumstances surrounding the death of the victim with a forced entry to the house and his death afterwards would be first degree murder, and we, as the police department, didn't know if he was invited into the house, didn't know if he was a visitor there. There's a lot of things that we did not have knowledge of at the time, because we did not have our evidence back from the lab.
>
> . . . .
>
> I told him that with him giving his side of the story, which he did not give me, and not knowing what actually occurred at the house—with him giving his side of the story, *there was a much better chance of him receiving a lesser offense than first degree murder, yes, I did say that.*

■ The officer's statement clearly went beyond exhorting defendant to tell the truth. He stated that a lesser charge would be much more likely if he gave "his side of the story." This is in clear violation of the rule. We find that defendant's confession was induced by the hope of leniency. Under the authority cited it cannot be said to be the product of "rational intellect and free will." It was not admissible. The judgment against the defendant was for related but separate convictions of murder in the first degree and burglary in the first degree. Both convictions must be and are hereby reversed and the case remanded for a new trial.

REVERSED AND REMANDED.