**STATE of Iowa, Appellee,**

v.

**Vincent Cortez BROWN, Appellant.**

No. 97–1314.

Court of Appeals of Iowa.

Oct. 29, 1998.

Patrick Wegman and Maggi Moss of Parrish Kruidenier Moss Dunn & Montgomery, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, John P. Sarcone, County Attorney, and Steve Foritano, Assistant County Attorney, for appellee.

Heard by CADY, C.J., and STREIT and VOGEL, JJ., but decided HUITINK, P.J., and STREIT and VOGEL, JJ.

STREIT, J.

Vincent Cortez Brown appeals his second-degree murder conviction for his role in a barbaric shoot-out which resulted in the death of an innocent bystander. We find Brown's statements to police voluntary and admissible, the second-degree murder conviction supported by substantial evidence, and the evidentiary rulings by the trial court were within the court's discretion. For these reasons, we affirm.

### I. Background Facts & Proceedings.

On April 8, 1996, Phyllis Davis was shot and killed while driving home from work. Davis unknowingly drove between two cars engaged in a gun battle. A driver of one of the vehicles, David Flores, fired the shot that killed Davis. The defendant, Vincent Cortez Brown, was the driver of the other vehicle involved in the battle.

The fray began when the occupants of a black Blazer began to follow a car being driven by Brown near the Oakridge neighborhood in Des Moines. Near the intersection of 18th and Atkins Streets, passengers of Brown's car fired bullets at the Blazer. A bullet crashed through the front windshield of a bystander's car and grazed the driver's head. The driver was injured, but not killed. Brown's car rolled north on 18th Street, the Blazer in the hunt, while the passengers of

both cars were firing shots at each other. Brown turned onto University and raced to a friend's house at 9th Street and University. Brown and another person dashed toward the house. The passengers of the Blazer were shooting at them as they arrived. Once inside, occupants of the house returned fire to the Blazer. It was in the cross-fire of this engagement that a bullet penetrated Davis's car and struck her under her left armpit. The bullet ripped through her lungs and heart, killing her.

The warring parties continued their fight. At one point Brown pursued the Blazer. Brown sought more ammunition at a nearby store. Officer Michael Hoffman stopped Brown's car, about a mile and one-half from the shooting, questioned Brown, and searched the car. Brown was arrested. At the Polk County Jail, Brown was interviewed by Detective Rowley of the Des Moines Police Department. The next day, Brown asked to speak to the police again. During the second interview Brown made inculpatory statements. Brown was charged with first-degree murder, attempted murder, and terrorism. A jury found him guilty of second-degree murder, assault with intent to commit serious injury, and assault. Vincent Cortez Brown appeals.

### II. Denial of Motion to Suppress Statements to Police Officers.

Because Brown's motion to suppress statements made to police officers involves a constitutional challenge, we review de novo. See State v. Howard, 509 N.W.2d 764, 767 (Iowa 1993). Brown claims all questioning of him should have stopped after he asked, "Is my lawyer here?" He also claims his statements were not voluntary and were solely obtained by coercive statements and promises of leniency.

Brown argues his question to officers, "Is my lawyer here?" was a request for counsel which should have ceased further questioning by the officers. See Edwards v. Arizona, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). A suspect's request for an attorney must be unequivocal. Davis v. United States, 512 U.S. 452, 114

S.Ct. 2350, 129 L.Ed.2d 362, 371 (1994). Even a suspect's statement "I might need a lawyer" is insufficient to invoke a right to counsel. *State v. Morgan*, 559 N.W.2d 603, 608 (1997). Brown's question was not a request for counsel. The police officers did not violate his rights in continuing the interview after this question.

■ During the interrogation, Brown said passengers of his vehicle were shooting at the Blazer while driving through town. He also told of his firing a gun that night, pursuing the Blazer, and driving to a hardware store to buy more ammunition.

Brown suggests interrogation techniques of the officers were coercive and promised him leniency. Specifically, he objects to the following: (1) accusing Brown of lying repeatedly; (2) telling Brown thirty witnesses saw him firing guns; (3) telling Brown he was facing first-degree murder charges and this would mean he was in jail until "they throw dirt on you"; (4) suggesting Brown fired a gun in self-defense; and (5) telling Brown to tell the truth so they had something to take to the county attorney. The State does not dispute that this conduct occurred. The interrogation was tape recorded and the court heard exactly what was said and the tone and manner of the discussion.

■ The State has the burden of establishing by the preponderance of evidence the confession is voluntary. *State v. Oliver*, 341 N.W.2d 25, 28 (Iowa 1983); *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975); *State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992). In determining whether a confession is voluntary, we look at all the circumstances under which it was given. *See State v. Smith*, 546 N.W.2d 916, 926 (Iowa 1996). No one factor is determinative. *State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982). The court in *Davis* listed the following as factors in determining voluntariness of confessions:

> ... the defendant's age, experience, prior record, level of education and intelligence; the length of time the defendant is interrogated; whether physical punishment was used; defendant's ability to understand the questions; defendant's physical and emotional condition; whether any deceit or

improper promises were used in gaining the admission; and any mental weaknesses the defendant may possess. *Id.* (citations omitted). In the event the questioning was custodial, defendant's knowledge and waiver of his Miranda rights and the length of his detention would also be considered. *Id.*

*State v. Davis*, 446 N.W.2d 785, 789 (Iowa 1989).

■ None of the statements or actions by the officers in this case can be interpreted as promising Brown better treatment, less severe punishment, or more mercy by confessing guilt. *State v. Nolan*, 390 N.W.2d 137, 142 (Iowa App.1986). This case is not like *Hodges*, where the officer told the suspect if he gave his "side of the story, there was a much better chance of him receiving a lesser offense than first-degree murder." *State v. Hodges*, 326 N.W.2d 345, 349 (Iowa 1982). "An officer can ordinarily tell a suspect that it is better to tell the truth. The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession." *Id.* The officers' statements here did not go beyond urging Brown to tell the truth. They did not state or imply a lesser charge would be more likely if he gave his side of the story. Brown's confession was not induced by the hope of leniency.

■ Brown also argues the statements were coercive because of the relative strength of position, age, and experience of the parties. Brown was seventeen years of age when he was interrogated by a detective with over twenty years of experience on the police force. After a totality-of-the-circumstances review, we find the statements were not coercive so as to render Brown's confession involuntary. Brown had numerous prior contacts with police and knew how interviews were conducted. The interview lasted only an hour. Demanding Brown tell the truth is not coercive. *See State v. Hodges*, 326 N.W.2d at 349. The other statements by officers Brown objects to were not deceptive. They were not an attempt to mislead or deceive Brown. The officers did not ask trick questions. Vigorous interrogation of a

defendant is not coercion without a showing the questioning was a "device calculated to overbear" the will of defendant or "impair his capacity for self determination." *See State v. Davis*, 446 N.W.2d at 790. Brown's questioning was not coercive.

Because we find Brown's statements were voluntary, the district court properly admitted them to be considered by the jury in determining Brown's guilt or innocence.

### III. Sufficiency of Evidence for Second–Degree Murder.

▮ Brown contends there was not sufficient evidence to convict him of second-degree murder. He argues the State presented no evidence connecting him to the shooting of Davis and the State failed to prove beyond a reasonable doubt his actions were the proximate cause of Davis's death. He further contends the State failed to prove he was not justified in his actions.

The appellate scope of review from the denial of such a motion is well established:

[R]eview of a substantial evidence claim is on error. [An appellate court is] bound by the jury verdict unless the verdict is not supported by substantial evidence. In making this determination, [the court will] consider all the evidence in the light most favorable to the State. We accept all legitimate inferences that may fairly and reasonably be deducted from the evidence. Evidence is substantial if it could convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. Direct and circumstantial evidence are equally probative. Evidence, whether direct or circumstantial, must however do more than create speculation, suspicion or conjecture.

*State v. Sanborn*, 564 N.W.2d 813, 815–16 (Iowa 1997)(quoting *State v. Bayles*, 551 N.W.2d 600, 608 (Iowa 1996)).

▮ "A person who kills another person with malice aforethought either express or implied commits murder." Iowa Code

§ 707.1 (1995). The court instructed the jury in order to prove Brown guilty of second-degree murder the State must prove the following elements:

1. On or about the 8th day of April, 1996, the Defendant, Vincent Cortez Brown, or someone he knowingly aided and abetted, shot at another person.

2. The acts of the Defendant, or someone he knowingly aided and abetted, were the proximate cause of Phyllis Davis being shot and her death.

3. The Defendant, or a person he aided and abetted, acted with malice aforethought.

4. The Defendant was not justified ...

The first two elements set out by the court's jury instructions constitute the actus reus[1] of the crime of second-degree murder. The third sets out the mens rea[2] for second-degree murder.

▮ Phyllis Davis was undoubtedly a victim in a shoot-out between Brown and his rivals. To determine the existence of actus reus for second-degree murder we must determine whether Brown's conduct was the proximate cause of Davis's death. Proximate cause for the purpose of a criminal trial has the same meaning as used in a civil trial. *State v. Caldwell*, 385 N.W.2d 553, 556 (Iowa 1986). Cause in fact means but for the defendant's conduct the harm would not have occurred. *Id.* Legal cause means the defendant's conduct was a substantial factor in bringing about the harm. *Id.* Brown contentions are tantamount to his claiming he cannot be a proximate cause of Davis's death because her death was not reasonable and therefore not foreseeable. Proximate cause is based on foreseeability. *State v. Shortridge*, 555 N.W.2d 843, 845 (Iowa App.1996). We conclude the probability of death or injury during a moving shoot-out through downtown Des Moines is highly foreseeable.

Brown's engagement in conduct that created a very high risk of death or serious bodily injury to others was a proximate cause of

---

1. Conduct which is a constituent element of a crime, as opposed to the mental state of the accused.

2. The intention or knowledge of wrongdoing that constitutes part of a crime, as opposed to the action or conduct of the accused.

Davis's death. *See State v. Marti*, 290 N.W.2d 570, 579 (Iowa 1980). This is true whether it was the defendant or another participant in the shoot-out who fired the shot that killed the innocent bystander. *See id.* ("It is not essential for conviction in all cases that the accused actively participated in the immediate physical impetus of death"). *See also State v. McFadden*, 320 N.W.2d 608, 609–10 (Iowa 1982)(holding the fact the defendant's auto, while drag racing, did not contact the victim's car did not preclude his conviction). Iowa law requires only the defendant did some act which resulted in the victim's death. *Id.*

Brown was the first to exchange gunfire with the Blazer at 18th Street. In that encounter, he nearly shot a bystander. Brown went to 9th and University to get more firepower. He encouraged others to join in the battle royal. He fired shots at the Blazer. He chased the Blazer after Davis had been killed, going to a local hardware store to restock his ammunition. He returned to the scene of Davis's death to continue his battle with the riders in the Blazer, but stopped when he saw police had arrived at the scene. These actions resulted in Davis's death, even if Brown's shot was not the physical impetus of death.

 In consideration of the mens rea element of second-degree murder, we hold that if death to an innocent bystander ensues from gang-style gunplay in a crowded urban area, each participant in the lethal encounter has exhibited malice. *See State v. Taylor*, 516 N.W.2d 38, 41 (Iowa App.1994) (citation omitted). Malice aforethought is "a fixed purpose or design to do some physical harm to another which exists prior to the act committed." *Id.* The purpose need not exist for a long time. "It is sufficient if it exists at any time before the killing." *Id.* "Malice aforethought can be implied from the use of a deadly weapon accompanied by an opportunity to deliberate." *Id.* In this shoot-out Brown clearly had a purpose to harm his rivals. This purpose existed before Davis's death. He shot at the occupants of the Blazer before Davis's death and while Davis was shot. The jury could have inferred malice from Brown's actions.

Brown argues the State did not prove he was unjustified in his actions. At several points during the shoot-out Brown could have chosen to retreat. At these crucial points, however, the State proved he chose to further instigate the shoot-out. Brown was not a mere victim in the shoot-out, but an aggressor.

Substantial evidence supports the jury's verdict Brown was guilty of second-degree murder beyond a reasonable doubt. The jury's verdict is affirmed.

### IV. Jury Instructions.

 Brown challenges the jury's submission of a second-degree murder instruction to the jury. When jury instructions are challenged on appeal, we review them to determine whether they correctly state the law and are supported by substantial evidence. *State v. Predka*, 555 N.W.2d 202, 204 (Iowa 1996). Evidence is substantial if it would convince a reasonable person of the facts sought to be proven. *Id.* Even if a jury instruction should not have been given, reversal is not required unless the error is prejudicial. *Gore v. Smith*, 464 N.W.2d 865, 868 (Iowa 1991).

As discussed in section IV, Brown's gun-battle participation was a proximate cause of Davis's death. The State presented sufficient evidence of malice aforethought by showing Brown's intent to cause someone bodily harm immediately before Davis's death. Because substantial evidence proved each element of the crime, the trial court did not err in submitting the second-degree murder instruction to the jury.

 Brown contends the second-degree murder instruction should not have been submitted to the jury because it is not a lesser-included offense of felony murder. This objection was not raised to the district court, and, for that reason, is not preserved for appellate review. We consider only those objections to instructions a party previously raised with the district court. *State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997).

### V. *Admission of Evidence.*

Brown contends the trial court erred in admitting two bullets found in a duplex on 9th Street. Brown argues the bullets were not relevant because they were found almost forty-eight hours after Davis's death.

Review of the district court's evidentiary ruling is for an abuse of discretion. *See State v. Anderson,* 565 N.W.2d 340, 342 (Iowa 1997); *State v. Casady,* 491 N.W.2d 782, 785 (Iowa 1992); *State v. Gordon,* 354 N.W.2d 783, 784 (Iowa 1984); *State v. Kane,* 492 N.W.2d 209, 210 (Iowa App.1992). The State argues Brown has not preserved error, however, it is well settled that "an adverse ruling on a pretrial suppression motion will suffice to preserve error for appellate review even though there is no attendant trial objection to the controverted material when offered in evidence." *State v. Wright,* 441 N.W.2d 364, 366 (Iowa 1989).

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 401. The test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without such evidence. *State v. Knox,* 536 N.W.2d 735, 738 (Iowa 1995).

The State offered sufficient evidence the bullets were fired in the perpetration of the offense. There was a shootout on 9th Street. A .38 caliber revolver was found in Brown's vehicle shortly after the shoot-out. The bullets could have been fired from a .38 caliber revolver. The duplex did not have bullet holes in the walls when they were inspected by the owner on April 4th, but, by April 10th the bullet holes existed. The inability to identify the exact source of the bullets goes to the weight of evidence and not admissibility. *See Foster v. State,* 378 N.W.2d 713, 718 (Iowa App.1985). The trial court's evidentiary ruling is affirmed.

**AFFIRMED.**