# IN THE COURT OF APPEALS OF IOWA

No. 18-0429
Filed May 1, 2019

**SCOTT ALLEN DOORNINK,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Marsha Bergan, Judge.

Scott Doornink appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

John W. Pilkington of Nidey Erdahl Fisher Pilkington & Meier, PLC, Marengo, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Scott Doornink appeals the district court's denial of his application for postconviction relief (PCR), contending the court erred in rejecting his claim that his trial counsel rendered ineffective assistance in failing to move to suppress evidence concerning alleged improperly induced statements he made to law enforcement.

I.      **Background Facts and Proceedings**

In March 2011, Doornink was fifty years old.  At this time, J.R., a fifteen-year-old girl, was friends with Doornink's son, who lived with Doornink.  On the evening in question, J.R. visited Doornink's residence, where his son was hosting a social gathering.  At his son's request, Doornink went out to buy alcohol for the gathering.  Doornink went on a second alcohol run later in the evening.  At some point, Doornink began speaking to J.R.; he told her he had just been to a strip club and his wife recently passed away.  Doornink told J.R. there was something in the bedroom he needed to show her about his deceased wife.  J.R. went to the bedroom with Doornink.  She then recalled waking up naked.  One of J.R.'s friends came to the residence and, upon looking in the bedroom, observed J.R. and Doornink lying in the bed, naked.  The friend accused Doornink of wrongdoing; Doornink retorted it was his house and his room and he could do what he wanted to.  J.R. put on some of Doornink's clothes and the friend took her home.  Shortly thereafter, J.R.'s mother notified law enforcement J.R. had been sexually assaulted at Doornink's residence while she was intoxicated.  J.R. went to the

hospital, and a rape kit was administered. Law enforcement obtained a search warrant for Doornink's residence. Officers found J.R.'s clothing in the home.[1]

Detective Richardson was one of the officers involved in executing the search warrant. Doornink agreed to speak with Richardson and, later in the day, Doornink reported to the sheriff's department on his own volition, where he was interviewed by Richardson.[2] The interview commenced at roughly 3:52 p.m. Richardson advised at the outset the interview was just an "informational gathering thing" and related "you're not going to get arrested at any time, you're free to get up and walk out, just like you walked in. . . . You can stop this at any time." Doornink replied, "I'm here because I've got nothing to hide."

At first, Doornink generally denied any wrong doing. Doornink acknowledged J.R. consumed vodka and was intoxicated but denied knowing where she obtained the alcohol. Richardson advised Doornink that he already knew Doornink was not being honest and related if he was not honest his credibility would "start going down the hill." Upon questioning about J.R., Doornink stated she was drinking and got "really flirty," and when he went to bed she came into his bedroom. Initially, Doornink reported there was "some clothing removal," but "nothing happened." Doornink clarified his clothes were already off because he sleeps naked, and J.R. "started taking some of her clothes off" without his assistance and "got completely naked," after which "there was a little kissing and that was it, nothing else happened." Upon further questioning, Doornink noted he

---

[1] The foregoing facts are discerned from the trial information and minutes of evidence in the underlying criminal matter.

[2] A video recording of the interview was admitted as evidence at the PCR trial.

"possibly" put his mouth on J.R.'s breast. Richardson advised of the potential for DNA swabbing of J.R.'s breast and revisited the issue of credibility with Doornink, noting, "Your truthfulness of this is gonna probably weigh a bit with the county attorney with what ultimately comes down the pike, so, again, you know you can say one thing, but evidence is going to point another way. . . . You're trying to get this all squared away." Doornink then conceded he put his mouth on J.R.'s breast. Richardson then asked if Doornink penetrated J.R.'s vagina with his finger; Doornink responded, "Probably." Richardson then advised, "Your honesty and everything else with this whole episode is going to carry so you might as well just say what transpired because I already know a lot of things from [the] hospital, so I am trying to see how honest you're going to be with me." Doornink then conceded he penetrated J.R.'s vagina with his finger, noting it was consensual. Richardson then went into whether Doornink engaged in genital-to-genital contact with J.R., noting "Your truthfulness, again, is going to be a big part of this." Doornink denied that circumstance and continued to do so during the remainder of the interview. The interview concluded at 4:26 p.m., and Doornink was allowed to leave.

Doornink was arrested roughly two weeks later. He was charged by trial information with third-degree sexual abuse and supplying alcohol to a minor.[3] In October, Doornink pled guilty to third-degree sexual abuse under an age-differential theory. *See* Iowa Code § 709.4(2)(c)(4) (2011).[4] The plea agreement

---

[3] In June, pursuant to a plea agreement, Doornink pled guilty to the alcohol charge and was sentenced.

[4] The State charged Doornink under three separate theories for third-degree sexual abuse: the act was done by force or against the will of another, *see* Iowa Code § 709.4(1); the act was between persons not cohabiting as husband and wife, the victim was fourteen or fifteen years old, and the perpetrator was four or more years older, *see id.* § 709.4(2)(c)(4);

did not include a stipulation as to sentencing recommendations. The matter proceeded to immediate sentencing. The State requested the imposition of a term of incarceration, and Doornink requested a suspended sentence and probation. The court sentenced Doornink to, among other things, a term of incarceration not to exceed ten years.

In October 2013, Doornink filed his PCR application. Following a number of continuances, a PCR trial was held in December 2017. Doornink generally argued his counsel rendered ineffective assistance in failing to move for suppression of his confession to law enforcement on the ground that it was improperly induced with promises of leniency.

Doornink's counsel in the criminal proceedings died before the PCR trial and was therefore unable to testify. Doornink testified he and his trial attorney never discussed his interview with Richardson or about potentially filing a motion to suppress the statements he made therein. He additionally testified he chose to plead guilty because his counsel advised him he would probably get probation, although counsel made clear probation instead of a term of imprisonment was not a guarantee. He testified, looking back, he would have insisted on going to trial if his statements to Richardson were suppressed. However, he confirmed on cross-examination that he "had a pretty substantial motivation" to resolve the case in a

---

or the act was performed while the other person was incapacitated or physically helpless, *see id.* § 709.4(4).

The first and third alternatives amounted to forcible felony violations, while the age-differential alternative did not. *See id.* § 702.11(1), (2)(c). Agreeing to plead to the non-forcible alternative gave Doornink the benefit of being eligible for a deferred judgment or deferred or suspended sentence. *See id.* § 907.3. If convicted under a theory that amounted to a forcible felony, the imposition of a term of imprisonment would have been statutorily required.

way that he not be sentenced to prison, as he had a good job and two children he did not want to leave on their own, as his wife had recently passed away. Doornink testified Richardson's statement that his truthfulness would weigh with the county attorney influenced his decision to continue to speak with the officer and be more forthcoming.

Richardson also testified at the PCR trial. Richardson agreed he never obtained any DNA evidence in his investigation to suggest sexual contact between Doornink and J.R. It likewise appears that J.R. never affirmatively stated that she and Doornink engaged in a sex act. The prosecuting attorney also testified. He noted he extended a plea offer to Doornink to plead guilty to the non-forcible variation of third-degree sexual abuse. The prosecutor also explained it is his common practice in sex-crime cases to condition plea offers on acceptance by the defendant without any further action that might subject the alleged victim to any further victimization, such as filing motions to suppress or pursuing depositions. The prosecutor also testified he commonly tried cases against Doornink's counsel, a public defender with extensive experience in criminal law, and he would have certainly been aware of the conditional terms of the offer. The prosecutor stated that if the defense had pursued a motion to suppress or depositions, the plea offer would have been withdrawn. The prosecutor also confirmed his belief that he had substantial evidence to corroborate Doornink's confession. The prosecutor also noted, had Doornink unsuccessfully moved to suppress his confession, he would have pursued a forcible-felony variation of third-degree sexual abuse at trial, noting he had "an interested and willing victim, and the facts of the case were there to go

forward." However, the prosecutor also confirmed the plea offer might have remained intact had Doornink successfully suppressed his confession

The district court ultimately denied Doornink's PCR application. The court concluded Richardson's statements did not amount to promises of leniency and counsel was therefore not ineffective in failing to move to suppress the confession. The court alternatively noted trial counsel's apparently tactical decision to forego pursuing a speculative motion to suppress; it could have jeopardized the pending plea offer for Doornink to plead guilty to a non-forcible variation of third-degree sexual abuse, which was the only variation that would have allowed Doornink to potentially receive a sentence in accordance with his principle wish, staying out of prison. In light of Doornink's background—which included honorable service in the military, a limited criminal history, gainful employment, and model performance during pre-trial release—the court concluded defense counsel's decision to forego filing a risky motion to suppress and pursue a sentence not including prison time was reasonable, especially because the risks of pursuing the motion to suppress were great. The court explained: "Doornink's counsel . . . had a significant reason not to file a motion to suppress, to wit: loss of the ability to plead to a non-forcible felony and to request a suspended sentence." The court concluded:

> [Counsel] did not fail to perform an essential duty in failing to file a motion to suppress the admissions that Doornink made to . . . Richardson. This was a sound evidentiary decision as well as a tactical or strategic decision on the part of [counsel]. It has not been shown to have been made as the result of inattention to [counsel's] responsibilities in representing Doornink. In light of all of the circumstances, [counsel's] decision was based on his reasonable professional judgment; and his actions do not rise to the level of ineffective assistance of counsel.

The court also concluded Doornink failed to meet his burden for the prejudice prong of his claim. Doornink now appeals the denial of his PCR application.

## II.    Standard of Review

Appellate review of PCR proceedings is typically for correction of errors at law, but where claims of ineffective assistance of counsel are forwarded, our review is de novo. *See Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Because Doornink's claim concerns the effectiveness of trial counsel, he must prove by a preponderance of the evidence that (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

## III.    Analysis

To establish the first prong of his claim, Doornink must show counsel "performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Importantly, "we begin with the presumption that the attorney performed competently" and "we avoid second-guessing and hindsight." *Id.* Also important is the principle that "ineffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* Miscalculated strategies and mistakes in judgment will not typically support an ineffective-assistance claim. *Id.* at 143. A failure to register meritless

motions does not amount to ineffective assistance of counsel.  *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).

Doornink argues the following statements on the part of Richardson amounted to improper inducements for his confession to engaging in a sex act with J.R. and his counsel was therefore under a duty to suppress them:

> Your truthfulness of this is gonna probably weigh a bit with the county attorney with what ultimately comes down the pike. . . .  You're trying to get this all squared away.
> . . . .
> Your honesty and everything else with this whole episode is going to carry so you might as well just say what transpired because I already know a lot of things from [the] hospital, so I am trying to see how honest you're going to be with me.
> . . . .
> Your truthfulness . . . again, is going to be a big part of this.

First and foremost, the final statement was not made by Richardson until after Doornink admitted to engaging in a sex act with J.R.; it therefore had no bearing on his confession.  Under the evidentiary test for promises of leniency, a confession is inadmissible if influenced by any threat or promise.  *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012).  The supreme court has stated:

> An officer can ordinarily tell a suspect that it is better to tell the truth.  The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession.  Ordinarily the officer's statements then become promises or assurances, rendering the suspect's statements involuntary.

*Id.* at 727 (quoting *State v. Hodges*, 326 N.W.2d 345, 349 (Iowa 1982)).

Upon our review, we agree with the State that Richardson did not improperly "promise any particularized or concrete benefit from cooperation."  In our view, the only statement that was nearing an improper inducement was that "truthfulness of this is gonna probably weigh a bit with the county attorney with what ultimately

comes down the pike." Although nearing the line of impropriety, we do not view this as an impermissible promise or assurance of leniency. Richardson did not specifically advise Doornink would receive leniency if he was forthcoming with information. "An offer to inform the county attorney of the defendant's cooperation, without any further assurances, is not improper." *State v. Polk*, 812 N.W.2d 670, 675 (Iowa 2012). In *Polk*, an officer told a suspect, "[I]t has been my experience working cases like this, that if somebody cooperates with us, on down the road the county attorney is more likely to work with them." *Id.* The officer's statement in *Polk* was much closer to the line than Richardson's statements in this case, and the supreme court in *Polk* only concluded the officer crossed the line when statements of this nature were combined "with suggestions Polk would not see his kids 'for a long time' unless he confessed." *Id.* at 676. Here, Richardson simply stated truthfulness would "probably weigh a bit with the county attorney." Richardson omitted any reference to what benefit he would receive or how he would be helped. We therefore find Richardson's statements did not cross the line. *See, e.g., State v. Bunker*, No. 13-0600, 2014 WL 957432 at *2 (Iowa Ct. App. Mar. 12, 2014) (concluding "detective did not cross the line because she omitted any reference to how [defendant] would be helped"); *State v. Foy*, No. 10-1549, 2011 WL 2695308 at *3 (Iowa Ct. App. July 13, 2011) (finding line not crossed where investigators did not specify benefit to be received).

Upon our review, we find the proposed course of action, although a close call, would have failed and counsel therefore did not breach an essential duty in not pursuing it. *See Tompkins*, 859 N.W.2d at 637. As such, Doornink's ineffective-assistance claim fails. *See McNeal*, 897 N.W.2d at 703. Alternatively,

we wholeheartedly agree with the district court's conclusion that counsel had a sound tactical reason to not pursue the motion to suppress that was objectively reasonable—doing so could have jeopardized Doornink's ability to plead guilty to a non-forcible variation of the charged crime and negated the possibility of attaining Doornink's principal goal in these proceedings, staying out of prison. Although we have concluded Richardson's statements did not cross the line, we fully acknowledge they came close. The evidence shows counsel was aware that if he unsuccessfully pursued a motion to suppress, the plea offer would have been retracted, and the State would have pursued a forcible felony conviction at trial. We alternatively conclude that counsel's decision to not roll the dice on a risky motion to suppress under the unique circumstances of this case was a professional judgment call that was not objectively unreasonable. Because the decision was reasonable under the circumstances, we find counsel did not fail to perform an essential duty. *See Tompkins*, 859 N.W.2d at 637.

## IV. Conclusion

Upon our de novo review, we conclude counsel was not ineffective as alleged. As such, we affirm the denial of Doornink's PCR application.

**AFFIRMED.**