# IN THE COURT OF APPEALS OF IOWA

No. 19-0725
Filed July 22, 2020

**STATE OF IOWA,**
     Plaintiff-Appellant,

**vs.**

**MICHAEL HILLERY,**
     Defendant-Appellee.

_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Wittig, Judge.

On interlocutory appeal, the State challenges the district court's suppression of physical evidence and the defendant's statements based on a finding the officer improperly promised the defendant leniency. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellant.

Martha J. Lucey, State Appellate Defender, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Upon finding an officer improperly promised Michael Hillery leniency, the district court suppressed incriminating statements Hillery made and physical evidence obtained from him. On interlocutory appeal, the State challenges that ruling in several ways. First, the State contends the court should not have relied on the common law evidentiary test to suppress the evidence because Hillery did not raise that ground for suppression to the district court. Second, the State argues in the alternative that even if the district court properly considered the evidentiary exclusion rule, the court erred in determining the officer's statements to Hillery constituted a promise of leniency. Third, the State maintains that even if the officer improperly promised leniency, only Hillery's statements—not any physical evidence—should have been suppressed. Hillery urges us to affirm the district court ruling granting his motion to suppress, and he argues alternative theories for doing so.

### I. Background Facts and Proceedings.

On November 14, 2018, Officer Chad Leitzen saw Hillery ride his bicycle up to the front door of a home that the officer knew was being investigated for illegal drugs sales and consumption. When Officer Leitzen drove by the home again a few minutes later, he saw both Hillery, who was getting back on his bicycle to leave, and the resident of the home who was suspected to be illegally selling drugs. Believing Hillery had just bought drugs from the resident, the officer followed Hillery as he rode his bicycle away.

As Hillery got off his bicycle to walk it up a hill, Officer Leitzen drove past and parked further up the hill. Then, as Hillery walked past, Officer Leitzen opened

his vehicle door, called Hillery by his first name, and asked if he could speak with him. According to Officer Leitzen's testimony at the suppression hearing, Hillery "completely ignored [him], like [he] wasn't there. And continued walking." Officer Leitzen then got out of the car and started walking behind Hillery. At this point, the officer smelled "fresh," unburnt marijuana coming from Hillery's person. The officer again called Hillery's name and told him he needed to stop. When Hillery continued to ignore him, Officer Leitzen—who was not in uniform—"pulled out [his] badge" and "walked up next to" Hillery, showing Hillery the badge and identifying himself as part of the police drug task force. Hillery continued to walk while telling Officer Leitzen he had done nothing wrong.

At that point, Officer Leitzen stepped in front of Hillery, stopping him from walking any further. Officer Leitzen told Hillery to give him what he had just bought, and Hillery responded that he bought nothing. Hillery told the officer he stopped at the home to drop off money owed to his coworker who lived there. Officer Leitzen told Hillery he was sure that he bought something and he needed to give it to him. He also told Hillery he was not looking to take him to jail that day. According to this testimony at the suppression hearing, Officer Letizen said, "I'm looking more for your cooperation to try and get your help to get into that place. . . . That's not to say that you're not going to go to jail someday for this, but I'm not looking to take you to jail today for it. I just want your cooperation."

Hillery then reached into his pocket and came out with a balled fist, reiterating to the officer that he had bought nothing and had not done anything wrong. Officer Leitzen put his open hand below Hillery's balled up fist and told Hillery to drop what he was holding. Hillery dropped a small plastic bag holding

crack cocaine, shoved his bicycle into the officer, and took off running. Officer Leitzen chased Hillery and grabbed onto him, at which point Hillery said, "I thought you said I'm not going to jail today." Officer Leitzen responded, "I told you that I need your cooperation, and you're not going to go to jail today if you start cooperating, but that better happen pretty quickly, because there's officers coming." Hillery conveyed he would cooperate, returned to the area where his bicycle was, and sat down on the curb. At some point later, Hillery also turned over a bag of marijuana to the officer.

In February 2019, Hillery was charged with one count of possession of a controlled substance (crack cocaine) and one count of possession of a controlled substance (marijuana). Hillery moved to suppress, alleging a violation of his constitutional rights when he was stopped and detained by the officer without a warrant and questioned without the benefit of counsel or having his rights read to him. Later, Hillery filed an addendum to his motion to suppress, asserting "[t]hat any evidence and statements that were obtained were done so after a promise of lenience, in violation of the Fifth Amendment to the United States Constitution, and article I, sections 1 and 8 of the Iowa Constitution." He asked that any physical evidence and statements be suppressed as a result.

Following a suppression hearing, at which only Officer Leitzen and another officer—who later talked to Hillery about signing a cooperation agreement—testified, the district court granted Hillery's motion to suppress. During that hearing, Officer Leitzen acknowledged that "it wasn't until after you [Leitzen] had promised him [Hillery] he wouldn't be going to jail that he finally turned over the drugs." The court ruled:

The Iowa and United States Supreme Courts have held many times that an officer's promise of leniency is improper to obtain cooperation or confessions from Defendants. *See State v. Polk*, 812 N.W.2d 670 (Iowa 2012); *Brady v. U.S.*, 397 US 742, 90 S. Ct. 1463 (1970) ( . . . even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.)

IT IS THEREFORE ORDERED that the Motion to Suppress is granted. The evidence obtained after the promise of leniency was made is fruit of the poisonous tree and therefore is not admissible against him.

The State appeals.

## II. Standards of Review.

"Our review of the district court's ruling on promises of leniency under the common law evidentiary test is for corrections of errors at law." *State v. Howard*, 825 N.W.2d 32, 39 (Iowa 2012).

"We review determinations of whether to suppress both evidence obtained and statements made in violation of constitutional guarantees de novo." *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015).

## III. Discussion.

### A. Evidentiary Test.

There are two ways to challenge a confession based on an improper promise of leniency. One way is the common law evidentiary test. *See Howard*, 825 N.W.2d at 39 ("We recently declined the State's invitation to abandon our common law evidentiary rule on promissory leniency in favor a totality-of-the-circumstances test."). "The test 'is whether the language used amounts to an inducement which is likely to cause the subject to make a false confession.'" *Id.* at 40 (citation omitted). The common law evidentiary test is a per se exclusionary

rule. *See State v. Madsen*, 813 N.W.2d 714, 725 (Iowa 2012). In other words, if the court determines the officer's statements to Hillery constituted an impermissible promise of leniency, it must suppress. *See Howard*, 825 N.W.2d at 40 ("[A] 'confession can never be received in evidence where the prisoner has been influenced by any threat or promise.'" (citation omitted)). "The use of a per se exclusionary rule eliminates the need for the court to attempt to read the mind of defendant to determine if his confession, in fact, was induced by or made in reliance upon the promise of leniency." *Madsen*, 813 N.W.2d at 726.

Additionally, a defendant can challenge the voluntariness of their confession following an alleged promise of leniency under the Fifth and Fourteenth Amendments to the United States Constitution. *See Dickerson v. United States*, 530 U.S. 428, 433 (2000) ("Over time, our cases recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment."). When a defendant challenges the voluntariness of their statements under the constitutional analysis, we "look at 'both the characteristics of the accused and the details of the interrogation.'" *State v. McCoy*, 692 N.W.2d 6, 27 (Iowa 2005) (citation omitted).

> In order to establish the voluntariness of a defendant's inculpatory statements, the State must demonstrate from the totality of circumstances that the statements were the product of an essentially free and unconstrained choice, made by the defendant at a time when his will was not overborne nor his capacity for self-determination critically impaired.

*State v. Hodges*, 326 N.W.2d 345, 347 (Iowa 1982) (citation omitted). "No one factor is determinative of the voluntariness of a confession which necessarily

depends upon the totality of the circumstances of the individual case." *Id.* at 348 (citation omitted). We "determine[] the facts surrounding the inculpatory statement, assess[] their psychological impact on the defendant, and evaluate[] the legal significance of the defendant's reactions." *Id.* (citation omitted). "Many factors bear on the issue of voluntariness," including "the defendant's knowledge and waiver of [their] *Miranda* rights";[1] "age, experience, prior record, level of education and intelligence"; "the length of time defendant is detained and interrogated"; "whether physical punishment was used, including the deprivation of food or sleep"; "defendant's ability to understand the questions"; "the defendant's physical and emotional condition and [their] reaction to the interrogation"; "whether any deceit or improper promises were used in gaining the admissions"; and "any mental weakness the defendant may possess." *Id.* (citation omitted).

**1. Consideration of Common Law Evidentiary Test.** Here, the State contends the district court should not have relied on the common law evidentiary test to suppress evidence because Hillery did not raise that ground for suppression. We disagree. Hillery's addendum to his initial motion to suppress alleged he was improperly promised lenience. While he did not mention the evidentiary test in his motion, at the suppression hearing Hillery provided the district court with a number of case law citations to support his claim, several of which dealt with the court's common law approach to promises of leniency. Moreover, in *Howard*, which Hillery cited to the district court, our supreme court

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 471, 478–79 (1966) (establishing police requirement to advise suspects of their Fifth Amendment rights before a custodial interrogation).

"directed district courts to 'first employ the evidentiary test to determine the admissibility of confessions challenged on grounds of a promise of leniency.'" 825 N.W.2d at 39 (quoting *Madsen*, 813 N.W.2d at 726 n.1). The court should consider the constitutional challenge only if the evidentiary test does not require exclusion. *Madsen*, 813 N.W.2d at 726 n.1.

Because Hillery raised the common law evidentiary test as a basis for suppression, it was proper for the district court to consider.

**2. Were the Statements a Promise of Leniency?** Next, the State maintains that even if the district court should have considered the common law test, Officer Leitzen's statements to Hillery did not constitute a promise of leniency so the district court should not have granted the motion to suppress. Here, Officer Leitzen testified that upon Hillery's repeated denial of doing anything wrong or buying any illegal substances, Officer Leitzen told him, "I'm looking more for your cooperation to try and get your help to get into that place. . . . That's not to say that you're not going to go to jail someday for this, but I'm not looking to take you to jail today for it. I just want your cooperation." We must determine whether this statement was an improper promise of leniency.

"An officer can tell a defendant that it is better to tell the truth without crossing the line between admissible and inadmissible statements from the defendant." *Polk*, 812 N.W.2d at 674 (citation omitted). But the officer cannot communicate to a defendant "that an advantage is to be gained by making a confession." *Id.* at 674–75. It is significant that an officer actually has the authority to do what he tells the defendant, as opposed to promising a result or advantage over which the officer truly has no control. *See id.* at 675. Here Officer Leitzen

could choose not to arrest Hillery, thus it was action he could control. Where if the officer had promised a lesser charge, for example, only the prosecutor would have the authority to make the promise good.

We do not think Officer Leitzen made an improper promise of leniency. Officer Leitzen's statement that he would not take Hillery to jail that day and wanted Hillery's cooperation to build a case against someone else was not language that was likely to induce Hillery to make a false confession. The officer did not suggest a prosecutor would decline to charge Hillery or would charge him only for a lesser crime and he did not suggest Hillery would get a favorable sentence by confessing. *See, e.g.*, *Howard*, 825 N.W.2d at 41 (finding improper promise of leniency where officer never overtly made such statements but the officer's "line of question was misleading by omission" because it "strategically planted in [the defendant's] mind the idea that he would receive treatment, and nothing more, if he confessed"); *Polk*, 812 N.W.2d at 676 (finding an improper promise of leniency where officer suggested to the defendant that the county attorney was more likely to work with him if he cooperated and "implicitly threatened . . . that silence will keep him from his children for 'a long time'"); *State v. Kase*, 344 N.W.2d 223, 226 (Iowa 1984) (finding an improper promise of leniency when officers told the defendant no criminal charges would be filed "if she told him what she knew about [the decedent's] death and signed a consent to search her apartment," otherwise she would be charged with murder); *Hodges*, 326 N.W.2d at 346, 349 (concluding officers made improper promise of leniency by suggesting the "defendant would receive better treatment and less severe punishment" if he confessed, where

officers told defendant "there was a much better chance of him receiving a lesser offense than first degree murder" if he talked to them).

While Officer Leitzen's statements share some similarities with the officer's statements in *In re J.D.F.*, in which our supreme court found an improper promise of leniency, there are also important distinctions. 553 N.W.2d 585, 589–90 (Iowa 1996). In *J.D.F.*, an officer heard a call over the police radio of a juvenile carrying a weapon. *Id.* at 587. He saw a juvenile matching the description and approached him; after making contact with the juvenile, the juvenile fled. *Id.* When the officer was able to apprehend the juvenile a short time later, he did not have a weapon. *Id.* The juvenile denied ever having a weapon to the officer until the officer "eventually told him that if he showed them its location, [the officer] would not take him into custody at juvenile hall nor would he file charges against him." *Id.* At that point, the juvenile disclosed the location of the weapon. *Id.* Our supreme court concluded, "Although the police apparently acted in good faith and did, in fact, return [the juvenile] home, their promised lenience prejudiced" him. *Id.* at 589. The court reached this conclusion even though "it was the county attorney who later filed charges." *Id.* Here, Officer Leitzen did not go as far as the officer in *J.D.F.* Officer Leitzen did not say charges would not be filed against Hillery; he only told him he would not take him to jail that day.

Because Officer Leitzen's statements accurately conveyed what he intended to do and did not suggest he had more power in the process than he actually did, we think his statements to Hillery are more akin to those of the officers in *State v. Whitsel*, 339 N.W.2d 149 (Iowa 1983). In *Whitsel*, "detectives told [the defendant] that they would recommend to the county attorney that [the defendant]

receive psychiatric help and tell the county attorney of his cooperation." *Id.* at 153. "They emphasized, however, that they could not make any promises or give any guarantees and would only relate to the county attorney what had been said." *Id.* It was then the defendant made his confession. *Id.* Our supreme court found that an offer to inform the county attorney of the defendant's cooperation, without further assurance, is not an improper promise of leniency. *Id.* at 153–54.

Officer Leitzen did not make an improper promise of leniency to Hillery, so the district court should not have suppressed under the common law evidentiary test. But that does not end our analysis. *See Madsen,* 813 N.W.2d at 726 n.1 ("If the . . . court finds the evidentiary test does not require exclusion, it should still employ the totality-of-the-circumstances test to ensure the State has met its burden of establishing that defendant's confession was voluntary.").

**B. Constitutional Grounds.**

1. *Voluntariness of Statement.* Hillery asks us to consider other grounds for suppressing his incriminating statements and the physical evidence obtained. As he did in his motion to suppress, Hillery argues his statements were involuntarily made under the Fifth Amendment.[2] *See State v. Cromer*, 765 N.W.2d

---

[2] On appeal, Hillery also argues his rights were violated under article I, section 9 of the Iowa Constitution, and he asks us to "afford citizens greater protection of their individual rights" under the Iowa Constitution than the Federal Constitution currently does. *See State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 518 n.2 (Iowa 2011) (noting that "[a]lthough the Iowa Constitution does not contain an equivalent provision against self-incrimination" like the Fifth Amendment to the United States Constitution, our supreme court has "held such a right to be implicit in the 'due process of law' guaranteed by Article I, section 9"). Specifically, Hillery contends that in determining whether a defendant's statement was made voluntarily under the Iowa Constitution, we should take into consideration whether the defendant was "apprised of his right to leave or end police questioning at any time." But Hillery neither cited article I, section 9 of the Iowa Constitution in his motion to

1, 7 n.4 (Iowa 2009) ("A successful party in district court is not required to request the district court to rule on alternative grounds raised, but not relied upon by the district court in making its ruling, to assert those grounds in support of affirming the ruling of the district court when appealed by the opposing party.").

"We utilize a dual test in determining the admissibility of a defendant's inculpatory statements over a [F]ifth [A]mendment challenge." *State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997). "We first determine whether *Miranda* warnings were required and, if so, whether they were properly given." *Id.* "Second, we ascertain whether the statement is voluntary and satisfies due process." *Id.*

As to the first step, "*Miranda* warnings are not required unless there is both custody and interrogation." *Id.* "The custody determination depends on the objective circumstances of the interrogation, not on subjective views harbored either by the officer or the person being questioned." The ultimate question "is simply whether there was 'a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* (citation omitted). "In deciding whether a suspect is in custody at a given time, 'we examine the extent of the restraints placed on the suspect during the interrogation in light of whether 'a reasonable [person] in the suspect's position would have understood his situation' to be one of custody.'" *State v. Tyler*, 867 N.W.2d 136, 172 (Iowa 2015) (citation omitted). In making that determination, we consider four factors: "(1) the language

___

suppress nor made this argument to the district court. Therefore, we only consider his claim regarding the voluntariness of his statement under the framework of the Federal Constitution.

used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of her guilt; and (4) whether the defendant is free to leave the place of questioning." *Countryman*, 572 N.W.2d at 558.

It is undisputed that Officer Leitzen did not give Hillery *Miranda* warnings, so if we find Hillery was subjected to custodial interrogation, any admissions he made must be suppressed. *See State v. Miranda*, 672 N.W.2d 753, 759 (Iowa 2003) ("If this prophylactic measure [of giving *Miranda* warnings] is not carried out, evidence obtained as a result of a custodial interrogation is inadmissible.").

Here, Officer Leitzen initiated the interaction by calling to Hillery from his parked car and asking Hillery if he could speak with him. As Hillery continued walking up the hill, Officer Leitzen exited his car, eventually walking up to Hillery with his badge out, and told Hillery he needed to stop. By this point, Officer Leitzen smelled unburnt marijuana coming from Hillery's person. When Hillery continued to walk, Officer Leitzen stepped in front of Hillery, preventing him from walking further. We understand this action to be a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968); *State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013) ("Our decisions have universally held that the purpose of a *Terry* stop is to investigate crime."); *see also State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004) (holding that, to justify a *Terry* stop, "the police need only have reasonable suspicion, not probable cause, to believe criminal activity has occurred or is occurring"). "[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (citations omitted).

So the question is whether something occurred during the *Terry* stop to convert the encounter to one involving custody requiring *Miranda*. *See State v. Schlitter*, 881 N.W.2d 380, 407 (Iowa 2016) (Appel, J., concurring in part and dissenting in part) (recognizing "the evolution of interrogation from ordinary fact-finding into a highly confrontational and accusatorial proceeding converts a voluntary encounter into a custodial interrogation"). We conclude it did not. Although at one point after handing the officer crack cocaine, Officer Leitzen chased and grabbed Hillery after Hillery pushed his bicycle into him and took off running, none of the other factors support a finding of custody. Officer Leitzen and Hillery were standing on a public sidewalk during the afternoon. *See State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994) (concluding the defendant was not in custody for *Miranda* purposes when "the investigatory stop was temporary and brief," [t]he officers followed routine procedures during the pat-down search," and "[t]he stop and search was conducted in public"). As we said, Officer Leitzen initiated the interaction by asking Hillery if he could speak with him. While he eventually indicated to Hillery that he was sure Hillery bought something, Officer Leitzen did not offer any further evidence of Hillery's guilt. And while the officer did not tell Hillery he could leave or end the interaction, Officer Leitzen told Hillery more than once that he was not going to take him to jail that day, implying that Hillery was not under arrest. After Hillery ran from him, Officer Leitzen chased Hillery and grabbed him. At that point, the officer again assured Hillery he was not going to take him to jail, and Hillery agreed to cooperate and then returned to the area on the sidewalk they had been standing. We acknowledge Officer Leitzen prevented Hillery from fleeing, but Hillery was not handcuffed or placed in the officer's car.

*Compare J.D.F.*, 553 N.W.2d at 587 (concluding the juvenile was clearly in custody when, after the juvenile fled, he was apprehended, handcuffed, and placed in the back of the squad car). The fact that Hillery was not allowed to control when the *Terry* stop ended does not mean Hillery, who was otherwise free to move about, was in police custody.

Because Hillery was not in custody, there is no basis to suppress his statements on the basis of not receiving *Miranda* warnings.

Next, we must consider the separate claim whether his statements were involuntarily given. "We employ the totality-of-the-circumstances test in determining voluntariness: it must appear the statements were the product of 'an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired." *Countryman*, 572 N.W.2d at 558. After a seemingly short interaction with Officer Leitzen, while he was otherwise unrestrained and in a public setting during the day, Hillery made incriminating statements. We recognize Officer Leitzen first told Hillery he would not take him to jail that day, but Hillery was not coerced or under duress at the time he made the statements. *See Hodges*, 326 N.W.2d at 348 (outlining the "[m]any factors [that] bear on the issue of voluntariness"). Hillery did not make any requests of Officer Leitzen, and he seemed to understand what was occurring during the interaction. Hillery's incriminating statements were voluntarily made, so we will not suppress them under the Fifth Amendment.

2. *Consent to Search.* Hillery argues his consent to search was not voluntarily given. *See, e.g., State v. Pals*, 805 N.W.2d 767, 777 (Iowa 2011) ("[T]he standard for determining the validity of a consent to search is whether the consent

was voluntarily given and not a result of duress or coercion, expressed or implied."). But no search occurred here. *See State v. Grant*, 614 N.W.2d 848, 852–53 (Iowa Ct. App. 2000) (providing the Fourth Amendment "secures the right of the people to be free from unreasonable government searches," and one's expectation of privacy protected by the Fourth Amendment "is applicable only to the unwarranted actions of government actors"). Hillery grabbed the crack cocaine out of his own pocket and dropped it in Officer Leitzen's hand. A little later on, Hillery also turned over a bag of marijuana to the officer.[3]

## IV. Conclusion.

Because the officer did not make an impermissible promise of leniency to Hillery, we reverse the suppression of incriminating statements and evidence obtained on the basis of the common law evidentiary rule. We have considered Hillery's alternative grounds for suppression and find them without merit. We reverse the district court ruling granting the motion to suppress and remand for further proceedings.

**REVERSED AND REMANDED.**

---

[3] While Hillery was certainly seized by Officer Leitzen, Hillery makes no argument on appeal that the seizure violated his constitutional rights. *See State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (noting short stops made for investigatory purposes, "even though temporary and for a limited purpose—is a 'seizure' within the meaning of the Fourth Amendment. Because the stop is a seizure, it is subject to the 'constitutional imperative that it not be "unreasonable" under the circumstances'" (citations omitted)).